VOCES DE LA FRONTERA, INC. and Christine
Neuman Ortiz, Petitioners-Respondents,

v.

David A. CLARKE, Jr.,
Respondent-Petitioner-Appellant.†

Court of Appeals

*No. 2015AP1152. Submitted on briefs February 2, 2016.
—Decided April 12, 2016.*

2016 WI App 39

(Also reported in 880 N.W.2d 417.)

† Petition for Review filed.

On behalf of the respondent-petitioner-appellant, the cause was submitted on the briefs of *Oyvind Wistrom*, of *Lindner & Marsack, S.C.*, Milwaukee.

On behalf of the petitioners-respondents, the cause was submitted on the brief of *Peter G. Earle*, Milwaukee.

Before Kessler, Brennan and Brash, JJ.

¶ 1. BRENNAN, J. Milwaukee County Sheriff David A. Clarke, Jr., ("Sheriff Clarke") appeals the trial court's grant of a writ of mandamus to produce unredacted immigration detainer forms ("I-247") received from U.S. Immigration and Customs Enforcement ("ICE").

¶ 2. Sheriff Clarke argues that Wisconsin's open records law, WIS. STAT. §§ 19.31–19.37 (2013–2014),[1] does not require disclosure of the redacted portions of twelve detainer forms at issue here because: (1) federal law, 8 C.F.R. § 236.6, specifically exempts disclosure of the redacted portions, and/or (2) non-disclosure is favored by the factors of the balancing tests set forth in *Linzmeyer v. Forcey*, 2002 WI 84, 254 Wis. 2d 306, 646 N.W.2d 811, and *Woznicki v. Erickson*, 202 Wis. 2d 178, 549 N.W.2d 699 (1996).

¶ 3. Voces de la Frontera, Inc. ("Voces") argues that: (1) the federal exemption to disclosure does not apply here because the jail inmates in question were not in federal custody, and (2) the balancing test factors compel disclosure of the redacted portions, especially given Wisconsin's very strong legislative statement of intent and public policy favoring disclosure.

¶ 4. We agree with Voces and affirm the trial court.

## BACKGROUND

¶ 5. On February 5, 2015, Voces submitted an open records request to Sheriff Clarke requesting copies of all I-247 forms received by Sheriff Clarke

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

from ICE since November 2014. After discussions with the trial court and Voces, on April 2, 2015, Sheriff Clarke provided redacted copies of twelve I-247 forms. Records custodian Captain Catherine Trimboli redacted the following information: (1) subject ID, (2) event number, (3) file number, (4) nationality, and (5) a series of boxes pertaining to immigration status. On April 7, 2015, Sheriff Clarke produced revised redacted I-247 forms, this time disclosing the previously objected-to item of the nationalities of the detainees. Voces filed a writ of mandamus in Milwaukee County Circuit Court, seeking full disclosure of the four redacted items under Wisconsin's open records law, WIS. STAT. § 19.31, *et seq.*

¶ 6. The trial court held a hearing on Voces' writ of mandamus on May 6, 2015. Captain Trimboli testified that the requested I-247 forms were records in the possession of Sheriff Clarke:

> Q. And the first thing you do when you receive an open records request is you determine whether or not the information sought constitutes a record or not?
>
> A. Correct.
>
> Q. And you had already determined that the I-247 forms were, in fact, records, right?
>
> A. Correct.

¶ 7. After determining that the request was for "records" in the possession of Sheriff Clarke, Captain Trimboli determined that none of the statutory exceptions to the disclosure of the I-247 forms applied:

> Q. ... So you pulled out Section 19.36 and you look at those exceptions that are listed there to determine whether any apply to this?

108

A. Correct.

Q. And you did that in this case?

A. Correct.

Q. On March 31, 2015, correct?

A. Correct.

Q. And you determined that none of those statutory exceptions applied; isn't that right?

A. Correct.

¶ 8. Captain Trimboli further testified that none of the common law exceptions applied to this request:

Q. So then the next step is to determine whether there is a common law exception that applies, correct?

A. Correct.

Q. And you did that as well, correct?

A. Yep.

Q. And you determined that none of the common law exceptions apply; isn't that right?

A. Correct.

¶ 9. Captain Trimboli also demonstrated that she understood that she needed to conduct a balancing test and that she deferred to ICE to make the determination on whether to redact and what to redact:

A. . . . When I looked at the form and determined that there was not state law based on the statute, then we conduct a balancing test. If I look at a document and I see that there may be law enforcement sensitive or

109

personally identifiable information on it, that is then the next step in determining if the information is releasable.

Q. How can you, a record custodian, conduct a balancing test when you don't know anything about the information that's being redacted?

A. I would ask somebody who knows what that information is.

Q. But how are you able to evaluate that information and the desire for secrecy for that information or nondisclosure of that information versus public access to that information if you don't know anything about it?

A. If it's concurring with another law enforcement agency, we would take that — another law enforcement agency telling us that something is a law enforcement sensitive identifier.

Q. So you just take their word for it? You don't scrutinize it to determine whether or not it has any merit? They said redact this, you redact it?

A. Yes. We work with other law enforcement agencies and if they tell me that one of their numbers that I don't know what it is is law enforcement sensitive, yes, I believe them.

¶ 10. On June 3, 2015, the trial court granted Voces' request for the writ of mandamus, emphasizing that this was a narrow ruling. The court considered Wisconsin's "long history of favoring openness in government, as mentioned [in] the 'blue sky law' or the 'blue sky litigation,' which favors openness in government and favors strongly the ability of citizens to . . . review the actions of their government officials." The court next addressed the balancing test as set forth in

*The John K. MacIver Institute for Public Policy, Inc. v. Erpenbach*, 2014 WI App 49, 354 Wis. 2d 61, 848 N.W.2d 862.[2] Recognizing that it was the Sheriff's burden to show that the public interest favoring redaction outweighed disclosure, the court found that "there was never a very good reason given as to why that information should be redacted other than ICE . . . believes it should be redacted."

¶ 11. Among the redacted information discussed by the parties was the "A" number, which is a unique number assigned to each person. Captain Trimboli testified that she has "no idea what the A number is used for." The court made findings of fact regarding the "A" number:

> [I]t's closer to a number that you would receive if you were arrested by the Sheriff's Department for a battery and taken into custody or if you were in the Wisconsin State Prison system, for example, . . . [which is] a unique number that identifies them and follows them through their time in and out of the prison system, but it's not to the degree that the Social Security number was used[.]

The court reasoned that the "A" number is not as valuable as a Social Security number because it is not "something that someone would be likely to steal," as it would not be helpful to identity theft or fraud.

¶ 12. In conducting the balancing test, the court noted arguments from both sides:

> [A]s the county noted, you don't have to give really much of a reason as to why you want to view particular public records. The proffered reason from the petition-

---

[2] This is the same balancing test as set forth in *Linzmeyer v. Forcey*, 2002 WI 84, 254 Wis. 2d 306, 646 N.W.2d 811 and *Woznicki v. Erickson*, 202 Wis. 2d 178, 549 N.W.2d 699 (1996).

ers is to make sure that the Sheriff's Department and the Sheriff in Milwaukee County is complying with the relevant State and Federal Laws, and to make sure that Sheriff Clarke and the Sheriff's Department is not and are not violating any laws by potentially detaining someone illegally or unlawfully.

¶ 13. The court found that "the request or the reasons given by the petitioners [were] fairly compelling." It further found that:

[T]he respondent's reasons for redacting the information is not as compelling. First of all, they've already agreed that under the open records law it is appropriate for them to turn over much of the information, they turned over the actual documents for the 12 individuals that have been detained, probably two-thirds to three quarters of the information has not been redacted . . . . The county has already conceded that significant information that could be obviously private to those individuals should be turned over as part of the open records law in the State of Wisconsin.

¶ 14. The court reiterated Wisconsin's " 'strong' presumption in favor of releasing records to ensure transparent government and an informed constituency" and further stated: "I think in this case it's clear that the petitioner has established that they have a legal right to review the records, that the governmental entity, in this case the Sheriff's Department, has a duty to disclose." Additionally:

I think that the petitioners have pursued the proper route [f]or the disclosure of these public records, and I believe that the Sheriff's Department has not met their burden to present the sufficient argument relative to overcoming the strong presumption as noted earlier pursuant to statute and pursuant to case law in presumption of full, open disclosure of records.

The bottom line in this case is that the petitioner has presented significant evidence that they desire these records for oversight of their government, oversight of the Sheriff's Department, Sheriff Clarke and others. Again, in this case the Sheriff's Department, would have to present a more compelling argument, would have to meet their burden that there's a better reason for non-disclosure or a better reason for some level of secrecy.

In this case the Court believes that the Sheriff's Department has not met their burden, which would outweigh the interest in public disclosure which would outweigh the longstanding interests of the 'blue sky law' of open records of openness to the public that goes back as I said decades, if not hundreds of years in the State of Wisconsin.

So having conducted the balancing test, having looked at the applicable law in this area, the Court is granting the request for the Writ of Mandamus from the petitioners.

¶ 15. On June 3, 2015, the trial court orally ordered Sheriff Clarke to produce the completely unredacted I-247 forms within the next 48 hours but stayed the order until June 12, 2015. Sheriff Clarke petitioned for leave to appeal and moved for a stay of that order. On June 11, 2015, we granted a temporary stay of the order. On June 24, 2015, we dismissed the petition for leave to appeal as moot because on June 16, 2015, the trial court filed its final written order and on June 17, 2015, Sheriff Clarke filed a Notice of Appeal.

## DISCUSSION

¶ 16. The petitioner, Sheriff Clarke, argues that: (1) Wisconsin's open records law, specifically Wis. Stat. § 19.36(1), exempts the disclosure of the

requested federal immigration documents here because federal law, 8 C.F.R. § 236.6, specifically exempts their disclosure; and (2) the *Linzmeyer* and *Woznicki* balancing tests favor non-disclosure of the redacted information.

¶ 17. The respondent, Voces, argues that: (1) 8 C.F.R. § 236.6 does not exempt the documents from disclosure because the detainees here were not in federal custody, and, therefore, the federal law does not preempt Wisconsin's open records law; and (2) the balancing test favors full disclosure of the I-247 forms.[3]

¶ 18. We affirm because we conclude that: (1) no exception to disclosure under Wisconsin's open records law applies; and (2) the Sheriff failed to meet his burden of showing that the public interest in non-disclosure outweighs disclosure, given Wisconsin's very strong legislative intent and public policy favoring disclosure.

---

[3] Voces also argues that Sheriff Clarke has forfeited the issue of whether 8 C.F.R. § 236.6 exempts the I-247 forms from disclosure because he did not raise it below. Sheriff Clarke concedes he did not specifically argue federal exemption under 8 C.F.R. § 236.6, but that he did raise federal law exemption from disclosure in the context of his federal Freedom of Information Act (FOIA) argument. We agree with that characterization of the record below and note that forfeiture is a rule of judicial administration which we may choose to ignore where there is a reason to do so. *See Seagall v. Hurwitz*, 114 Wis. 2d 471, 489–90, 339 N.W.2d 333 (Ct. App. 1983). We find such a reason here where the disclosure of a public record is being reviewed in the context of an issue which Wisconsin courts have not faced before and where the review is of a question of law, which we review independently of the trial court in any event. *See Helgeland v. Wisconsin Municipalities*, 2006 WI App 216, ¶ 9 n.9, 296 Wis. 2d 880, 724 N.W.2d 208.

## Legal Principles

¶ 19. This is a review of a writ of mandamus which was granted by the trial court. *See* Wis. Stat. § 783.01. "Mandamus is the appropriate remedy to compel public officers to perform duties arising out of their offices." *State ex rel. Oman v. Hunkins*, 120 Wis. 2d 86, 88, 352 N.W.2d 220 (Ct. App. 1984). The elements of a writ of mandamus are: "(1) a clear legal right; (2) a plain and positive duty; (3) substantial damages or injury should the relief not be granted, and (4) no other adequate remedy at law." *Id.* "Where a circuit court, determining a petition for writ of mandamus, has interpreted Wisconsin's open records law . . . and has applied that law to undisputed facts, we review the [trial] court's decision *de novo*." *ECO, Inc. v. City of Elkhorn*, 2002 WI App 302, ¶ 15, 259 Wis. 2d 276, 655 N.W.2d 510 (italics added; internal citation omitted).

¶ 20. Here we are asked to interpret a statute, Wisconsin's open records law, Wis. Stat. §§ 19.31 through 19.39. We interpret statutes independently of the trial court. *See Oshkosh Nw. Co. v. Oshkosh Library Bd.*, 125 Wis. 2d 480, 485, 373 N.W.2d 459 (Ct. App. 1985); *see also Seifert v. School Dist. of Sheboygan Falls*, 2007 WI App 207, ¶ 16, 305 Wis. 2d 582, 740 N.W.2d 177. We analyze a statute by looking first to the words of the statute to give effect to the legislative intent. *See Landis v. Physicians Ins. Co. of Wis., Inc.*, 2001 WI 86, ¶ 14, 245 Wis. 2d 1, 628 N.W.2d 893. "[I]n interpreting a statute, courts must attempt to give effect to every word of a statute, so as not to render any portion of the statute superfluous." *Id.*, ¶ 16. "Where a

statute unambiguously establishes legislative intent in its plain meaning, we apply that meaning without resorting to extrinsic sources." *Seider v. O'Connell*, 2000 WI 76, ¶ 52, 236 Wis. 2d 211, 612 N.W.2d 659.

¶ 21. Wisconsin's open records law begins with the legislature's explicit expression of intent and public policy:

> **Declaration of policy.** In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

WIS. STAT. § 19.31 (emphasis added).

¶ 22. The specific provision of the open records law at issue in this appeal is WIS. STAT. §§ 19.36(1)-(2), which creates an exemption from disclosure in the event a federal law exempts a record from disclosure. They state:

**Limitations upon access and withholding**

(1) APPLICATION OF OTHER LAWS. Any record which is specifically exempted from disclosure by state or federal law or authorized to be exempted from disclosure

by state law is exempt from disclosure under s. 19.35(1), except that any portion of that record which contains public information is open to public inspection as provided in sub. (6).

(2) LAW ENFORCEMENT RECORDS. Except as otherwise provided by law, whenever federal law or regulations require or as a condition to receipt of aids by this state require that any record relating to investigative information obtained for law enforcement purposes be withheld from public access, then that information is exempt from disclosure under s. 19.35(1).

WIS. STAT. §§ 19.36(1)-(2).

¶ 23. The methodology for analysis of Wisconsin's open records law is well-established. Where, as here, it is undisputed that the documents are records under Wisconsin's open records law, the next step is to look for an "exception based upon statute, common law, or an overriding public interest in nondisclosure." *See ECO, Inc.*, 259 Wis. 2d 276, ¶ 17; *see also* WIS. STAT. § 19.31. "The exceptions are grounded in statutory law and common law." *Seifert*, 305 Wis. 2d 582, ¶ 26. If the court finds that no statutory or common law exception applies, the court must then conduct, "a balancing test to decide whether the statutory presumption favoring disclosure of public records is outweighed by any other public interest." *Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶ 20, 327 Wis. 2d 572, 786 N.W.2d 177. "To determine whether the presumption of openness is overcome by another public policy concern, we apply the balancing test articulated by this court in *Woznicki v. Erickson*, 202 Wis. 2d 178, 549 N.W.2d 699, and *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 279 N.W.2d 179 (1979)." *Linzmeyer*, 254 Wis. 2d 306, ¶ 12. "That is, we must weigh the public policies not in favor of

release against the strong public policy that public records should be open for review." *Id.*

## 1. The redacted portions of the I-247 forms are not exempted from disclosure under federal law.

¶ 24. The first step in our analysis is to determine whether there is a statutory exception to disclosure under the Wisconsin open records law. Sheriff Clarke acknowledges that Voces' request was made under Wisconsin's open records law, WIS. STAT. §§ 19.31 through 19.39, and agrees that the I-247 forms are "records" under the law. However, the Sheriff argues that WIS. STAT. §§ 19.36(1)-(2) protects the forms from disclosure because information about detainees who are being held for the federal government is specifically exempt from disclosure under federal law, 8 C.F.R. § 236.6, and principles of the Freedom of Information Act (FOIA), 5 U.S.C. § 552.[4]

---

[4] Sheriff Clarke argues that the federal FOIA supports his interpretation of 8 C.F.R. § 236.6. He does not argue that it provides an independent basis for exempting the I-247 forms from disclosure. Given our conclusion that the federal statute fails to exempt the forms, we do not address FOIA in our opinion. The sections of FOIA discussed by Sheriff Clarke, 5 U.S.C. § 552(b)(7), are as follows:

 (b) This section does not apply to matters that are —

 . . .

 (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an

¶ 25. Voces counters that 8 C.F.R. § 236.6 fails to convey an exemption to disclosure under Wisconsin's open records law because none of the jail prisoners here were in federal custody. Specifically, Voces argues that 8 C.F.R. § 236.6 applies only to a state or local government entity that *"holds any detainee on behalf of the Service."* (Emphasis added.) It is undisputed that Sheriff Clarke held the jail prisoners in state custody and that custody had not expired at the time of the open records requests. Voces contends that the I-247 forms were only "requests" to hold the prisoner for the federal government in the future—after their state custody ended. Accordingly, Voces argues that the plain language on the I-247 forms and in the federal statute, along with other federal cases, shows the twelve jail prisoners were not being held on behalf of the federal government at the time of the open records request.

¶ 26. We agree with Voces and examine each of the Wisconsin and federal statutes in question.

¶ 27. Sheriff Clarke bases his argument on 8 C.F.R. § 236.6, which provides as follows:

---

unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual[.]

No person, including any state or local government entity or any privately operated detention facility, that houses, maintains, provides services to, or otherwise *holds any detainee on behalf of the Service* (whether by contract or otherwise), and no other person who by virtue of any official or contractual relationship with such person obtains information relating to any detainee, *shall disclose or otherwise permit to be made public the name of, or other information relating to, such detainee. Such information shall be under the control of the Service* and shall be subject to public disclosure only pursuant to the provisions of applicable federal laws, regulations and executive orders. *Insofar as any documents or other records contain such information, such documents shall not be public records.* This section applies to all persons and information identified or described in it, regardless of when such persons obtained such information, and applies to all requests for public disclosure of such information, including requests that are the subject of proceedings pending as of April 17, 2002.

(Emphasis added.)

¶ 28. Under the plain language of 8 C.F.R. § 236.6, for the redacted parts of the I-247 forms to be exempt from disclosure, the prisoner in question must be *held on behalf of the federal* government: "No person, including any state or local government entity . . . that . . . holds any detainee on behalf of the Service . . . shall disclose or otherwise permit to be made public the name of, or other information relating to, such detainee." 8 C.F.R. § 236.6. The Sheriff does not dispute the fact that the prisoners in question here were held on state charges which had not expired. Instead, the Sheriff argues that they were being held for the Service as well, due to the filing of the I-247 forms, and thus the federal statutory exception in Wisconsin's open records law required that the re-

dacted information not be disclosed. But the Sheriff is incorrect because the I-247 form itself makes clear, as does the case law, that federal custody only begins when the state custody ends. Here it is undisputed that the state custody had not ended.

¶ 29. The I-247 form itself acknowledges as much. It begins with a statement that the person named is in state custody—"currently in your custody." It then states that it is "*requested*" that the local law enforcement agency keep the person for The U.S. Department of Homeland Security ("DHS") for 48 hours *after* state custody ends—"beyond the time when the subject would have otherwise been released from your custody." (Emphasis added.) The language on the I-247 form states:

> THE U.S. DEPARTMENT OF HOMELAND SECURITY (DHS) HAS TAKEN THE FOLLOWING ACTION RELATED TO THE PERSON IDENTIFIED ABOVE, CURRENTLY IN YOUR CUSTODY:
>
> . . . .
>
> *This action does not limit your discretion to make decisions related to this person's custody classification, work, quarter assignments, or other matters.*
>
> . . . .
>
> IT IS REQUESTED THAT YOU:
>
> - Maintain custody of the subject for a period NOT TO EXCEED 48 HOURS, excluding Saturdays, Sundays, and holidays, beyond the time when the subject would have otherwise been released from your custody to allow DHS to take custody of the subject. This request derives from federal regulation 8 C.F.R. § 287.7.

. . . .

> An immigration detainer is a notice from DHS inform-
> ing law enforcement agencies that DHS intends to
> assume custody of you after you otherwise would be
> released from custody. DHS has requested that the law
> enforcement agency which is currently detaining you
> maintain custody of you for a period not to exceed 48
> hours . . . beyond the time when you would have been
> released by the state or local law enforcement authori-
> ties[.]

(Emphasis in original.)

¶ 30. The statute referenced on the I-247 form as
the authorizing federal legislation for the detainer, 8
C.F.R. § 287.7, further underscores that the detainer is
notice of the Department's interest in seeking custody
of an alien and is a request only. It states, in pertinent
part, as follows:

> (a) *Detainers in general.* Detainers are issued pursu-
> ant to sections 236 and 287 of the Act and this chapter
> 1. Any authorized immigration officer may at any time
> issue a Form I–247, Immigration Detainer–Notice of
> Action, to any other Federal, State, or local law en-
> forcement agency. *A detainer serves to advise another*
> *law enforcement agency that the Department seeks*
> *custody of an alien presently in the custody of that*
> *agency,* for the purpose of arresting and removing the
> alien. The detainer is a *request* that such agency
> advise the Department, prior to release of the alien, in
> order for the Department to arrange to assume cus-
> tody, in situations when gaining immediate physical
> custody is either impracticable or impossible.

8 C.F.R. § 287.7 (emphasis added).

¶ 31. From the plain language of both the I-247
form and 8 C.F.R. § 287.7, it is clear that DHS merely
*sought* custody with a "request," not an order, for a

48–hour hold after the alien was to be released from state custody. The form itself acknowledges that the prisoner is in the local law enforcement agency's custody until DHS makes further determination of whether it will take the prisoner into federal custody.

¶ 32. This conclusion is further supported by the fact that 8 C.F.R. § 287.7(e) makes it clear on its face that the detainer itself is a request only. The statute expressly states that the federal government will not be financially obligated to pay the detainee's expenses until the federal government actually takes custody of the detainee: "No detainer issued as a result of a determination made under this chapter I shall incur any fiscal obligation on the part of the Department, *until actual assumption of custody by the Department*[.]" 8 C.F.R. § 287.7(e) (Emphasis added.) This language makes it clear that local law enforcement agencies cooperating with an I-247 request do not relinquish custody and that the subject of the detainer request remains in local law enforcement custody until DHS actually assumes custody.

¶ 33. Case law supports our conclusion that the detainer is only a notification that a removal decision will be made at some later date. *See Campos v. Immigration and Naturalization Serv.*, 62 F.3d 311, 313–14 (9th Cir. 1995). " '[T]he bare detainer letter alone does not sufficiently place an alien in INS custody to make habeas corpus available.' " *Id.* at 314 (citation omitted). "[A]n INS detainer is not, standing alone, an order of custody. Rather, it serves as a request that another law enforcement agency notify the INS before releasing an alien from detention so that the INS may arrange to assume custody over the alien." *United States v. Female Juvenile, A.F.S.*, 377

F.3d 27, 35 (1st Cir. 2004). In short, receipt of an I-247 form by a local law enforcement agency does not convert a state prisoner into a federal detainee in the custody of ICE.

¶ 34. Sheriff Clarke cites to no case from any jurisdiction where the court has found, on facts as we have here, that the I-247 form creates a hold on behalf of the federal government. In his opening brief Sheriff Clarke cites to four cases to support his argument that the detainees here were being held in federal custody under 8 C.F.R. § 236.6: *Belbachir v. United States,* 2012 WL 5471938 (N.D. Ill. Nov. 9, 2012); *American Civil Liberties Union of New Jersey, Inc., v. County of Hudson,* 799 A.2d 629 (NJ. 2002); *Commissioner of Correction v. Freedom of Info. Comm'n,* 52 A.3d 636 (Conn. 2012); and *Ricketts v. Palm Beach Cty. Sheriff,* 985 So. 2d 591 (Fla. Dist. Ct. App. 2008). However, after Voces' brief argued that *Belbachir, Hudson,* and *Commissioner of Correction* supported Voces' interpretation of the law, Sheriff Clarke abandoned any reliance on those three cases in his reply brief. Instead he relied solely on *Ricketts.* But *Ricketts* is factually distinguishable and clearly inapposite.

¶ 35. *Ricketts* was not an open records case, but a review of a habeas corpus petition. *See id.* at 591. The federal district court affirmed the state trial court's denial of habeas relief on the grounds that the federal government had exclusive jurisdiction over Ricketts because he was being held by the federal government. *See id.* There are significant factual and procedural differences between Ricketts's detention and those of the detainees here. First, Ricketts had state bond set, which he tried to post, but the sheriff would not let him due to the fact that Ricketts had both an I-247 and an

I-203 form in his file.[5] *See id.* at 592 The sheriff in *Ricketts* testified that he should have let Ricketts post bond, but said that if Ricketts had posted, he would have thereafter been detained under either the form I-247 or the I-203 form and picked up by ICE as a federal detainee. *See id.* As a contrast, none of the twelve detainees here had bond set, all were still in state custody, and the record does not indicate that any had I-203 forms filed.

¶ 36. But even more significantly, the *Ricketts* court's explanation for its holding supports Voces' position here. Until a detainee is released from state custody—which Ricketts already should have been and which none of the twelve detainees were yet eligible for—he is in state, not federal custody. *See id.* at 593 Only when the detainee is booked on the federal detainer is he or she being held pursuant to federal authority. *See id.* As the court explained in *Ricketts*:

> Once appellant posts bond on his state charges or his state sentence expires, he will be "released" from state custody and then booked on the federal immigration detainer. At that point, the sheriff will not be holding appellant pursuant to state authority but pursuant to federal authority, and the legality of the detainer and the process by which he is held will be a question for the federal courts.

*Ricketts*, 985 So.2d at 593 (footnote omitted). Here the

---

[5] The *Ricketts* court explained that the I-247 form is considered a detainer and "requires the recipient to detain an alien for forty-eight hours after the alien ceases to be in custody on state charges." *Ricketts v. Palm Beach Cty. Sheriff*, 985 So. 2d 591, 592 (Fla. 2008). The court described the I-203 form as a hold which requires the alien to be held after being "released from state custody" at which time he is "considered to be in federal custody pending deportation proceedings." *Id.*

twelve detainees were still in custody on their state charges, so under *Ricketts*, they had not been "released" to federal custody.[6] *See id.* Therefore, unlike *Ricketts*, Sheriff Clarke was not holding them on behalf of the federal government, and the federal exemption to the open records law does not apply.

¶ 37. Next, we address the Sheriff's other non-Wisconsin cases, none of which supports his exemption argument here. In *Belbachir* (an unreported case), a federal judge upheld the confidentiality of certain information about immigration detainees who were in the actual custody of the United States pursuant to 8 C.F.R. § 236.6. *See Belbachir*, 2012 WL 5471938, at *4. *Belbachir* is clearly inapplicable here, where all detainees were still in the actual custody of the state.

¶ 38. Similarly, in *Hudson*, the INS detainees were in the custody of the federal government. They were being held in a county jail "pursuant to longstanding contracts between the INS and the counties." *Hudson*, 799 A.2d at 637. Likewise, the prisoners in *Comm'r of Correction* were held for INS by the state correctional center pursuant to an "intergovernmental service agreement." *Comm'r of Correction*, 52 A.3d at 640. In contrast, the prisoners at issue in the instant case were local prisoners who *might in the future* become federal immigration detainees; they were not being held by Milwaukee County pursuant to contract on behalf of the federal government.

¶ 39. Further, we note that if Sheriff Clarke was correct in his interpretation of the statutes that the

---

[6] Although *Ricketts* was decided by Florida state court, the court relies solely on federal law and does not address any state open records law analogous to Wisconsin's open records law.

filing of an I-247 makes the hold federal, then he was in error to provide any part of the form at all—redacted or otherwise—including the names of the prisoners. Pursuant to 8 C.F.R. § 236.6: "No person . . . shall disclose or otherwise permit to be made public the name of, or other information relating to, such detainee. Such information shall be under the control of the Service . . . . Insofar as any documents or other records contain such information, *such documents shall not be public records.*" (Emphasis added.) The statute clearly states that any information pertaining to the prisoner, including the person's name, is under the control of the Service and that the entire document shall not be released.

¶ 40. As a result of the foregoing statutory analysis we conclude that the plain language of the I-247 forms, the federal statutes, and the case law demonstrate that there is no federal exemption from disclosure of the redacted portions of the I-247 forms under Wis. Stat. §§ 19.36(1)-(2).

## 2. The balancing test favors disclosure.

¶ 41. Because we conclude that no exemption from disclosure applies, we next determine whether Sheriff Clarke has met his burden of showing that the balancing test weighs in favor of non-disclosure. As we noted at the outset, when reviewing whether a record must be disclosed under Wisconsin open records law, we begin with the "presumption that the public has the right to inspect public records;" we look next for an "exception based upon statute, common law, or an overriding public interest in nondisclosure." *See ECO, Inc.* 259 Wis. 2d 276, ¶ 17. We review that determina-

tion independently of the trial court. *Id.*, ¶ 15. There is a strong presumption in favor of openness. As the statute itself states, the statute "shall be construed in every instance with a presumption of complete public access," and "[t]he denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied." *See* Wis. Stat. § 19.31.

¶ 42. Sheriff Clarke has the burden of overcoming the presumption in favor of releasing the records. *See Fox v. Bock*, 149 Wis. 2d 403, 416, 438 N.W.2d 589 (1989) (it is the burden of the party seeking nondisclosure to show that the public interests favoring secrecy outweigh those favoring disclosure); *see also Linzmeyer*, 254 Wis. 2d 306, ¶ 11 ("In the absence of a statutory or common law exception, the presumption favoring release can only be overcome when there is a public policy interest in keeping the records confidential."). It is the duty of the records custodian to specify the reasons for not disclosing a record, and it is the court's role to decide whether the reasons asserted are sufficient. *See Fox*, 149 Wis. 2d at 416 ("If the custodian decides not to allow inspection, [s]he must state specific public policy reasons for the refusal."). Sheriff Clarke has failed to meet this burden.

¶ 43. Captain Trimboli testified that it is routine practice for the Sheriff to defer to other law enforcement agencies in their determination that certain information is law enforcement sensitive and, therefore, should be redacted. That is the extent to which the Sheriff conducts any balancing test, which is none at all. Instead, Captain Trimboli's testimony indicates that the interests of law enforcement *per se* outweigh

the statutory public policy of openness, which runs counter to the purpose and spirit of Wisconsin's open records law.

██

¶ 44. Although the records custodian conducted little to no balancing test whatsoever at the outset, Sheriff Clarke argues on appeal that the balancing test supports redactions on the I-247 forms without providing any specific or concrete reason in favor of this argument. After discussing at length the exemptions under FOIA, 5 U.S.C. § 552(b)(7), in very broad and general terms, the Sheriff's argument boils down to the idea that releasing the redacted identification numbers, which are used for internal tracking purposes, could lead to identity theft or fraud or subject individuals to harassment and undue public attention.[7] However, the Sheriff does not develop this argument with any facts and instead offers generalizations of potential misuse of a non-specific nature. He relies on hypotheticals and speculation. He supplies no testimony from ICE, for example, about identity fraud or harassment problems experienced with disclosure or any other specific potential problems. In short, there is no evidence in the record to support the assertion that release of the requested information might increase the risk of identity theft harassment in some tangible way. We do not develop a party's arguments for it. *State v. Gulrud*, 140 Wis. 2d 721, 730, 412 N.W.2d 139 (Ct. App. 1987).

---

[7] Sheriff Clarke offers an additional hypothetical that an individual who gained unauthorized access to the ICE system could illicitly modify data and circumvent law enforcement—a minute and remote risk that could also occur without the release of such information as, presumably, a hacker gaining unauthorized access to the system would have access to that same data even without the printed I-247 form.

129

¶ 45. Additionally, the Sheriff's sole public policy argument against disclosure is not even one of *public* policy, but rather focuses on hypothetical injury to the *individual*. The test is whether there is a risk to the *public* if information is released, not whether there is a risk to an *individual* if the information were released. *See Linzmeyer*, 254 Wis. 2d 306, ¶ 24 ("The fundamental question we must ask is whether there is harm to a *public interest* that outweighs the public interests in inspection of the Report.") (emphasis added). The Sheriff has not provided a sufficient public policy reason for refusing to disclose the redacted information, and we find none in the record to support this argument.

¶ 46. As the trial court stated:

> We have one of the strongest open records laws in the country. It's called the blue sky statute. It presumes all information held and used by public officials is open to the public so we know what our government is doing. We can hold them accountable. It's an invitation to monitor and surveil the conduct of government[.]
>
> . . . .
>
> [I]f these records unredacted could allow the public . . . in being able to identify if the Sheriff has violated federal law; violated an executive order from the President of the United States; maybe detaining people that he should not be detaining, that's a pretty strong public policy argument in favor of me ordering nonredacted copies to be turned over . . . . [I]f it's helping the public to identify that law enforcement at the County level is violating federal or state law, that's a pretty strong argument on behalf of [releasing the records to Voces].

¶ 47. Given the Sheriff's failure to meet his burden under Wisconsin's open records law in overcoming

the presumption favoring disclosure, we affirm the trial court's order to provide the I-247 forms to Voces in their unredacted form.

¶ 48. For all of the foregoing reasons, we affirm the trial court's order and lift our temporary stay forthwith.

*By the Court.*—Order affirmed.