¶ 46.
ANN WALSH BRADLEY, J.
{dissenting). Wisconsin's Public Records Law "serves one of the basic tenets of our democratic system by providing an opportunity for public oversight of the workings of government." Majority op., ¶ 17 (citations omitted). Relying on this basic tenet, Voces de la Frontera requests unredacted copies of federal immigration de-tainer forms issued to Milwaukee County Sheriff David Clarke by Immigration and Customs Enforcement ("ICE").
¶ 47. The circuit court determined that Wisconsin's Public Records Law requires the release of unre-dacted copies of the detainer forms. It explained that Voces de la Frontera made a compelling case and that Sheriff Clarke offered no good reason to justify any redaction.
*375 1 48. The court of appeals affirmed. Noting uncontested facts, it rejected Sheriff Clarke's newly raised argument that an obscure federal regulation, 8 C.F.R. § 236.6, precluded release of the detainer forms.[1]
¶ 49. Sheriff Clarke now contends that no de-tainer forms should be released. He asserts that the forms are statutorily exempt from disclosure and that his office erred when it previously released redacted detainer forms to Voces.
f 50. Reneging on previously uncontested facts and relying on a belatedly cited obscure federal regulation—never before applied to state or local detainees—Sheriff Clarke tosses a "hail mary" pass to the Wisconsin Supreme Court.[2]
¶ 51. The majority catches the pass and runs with it, but unfortunately makes no forward progress for the people of this state. Instead, a majority of this court loses ground, yet again chipping away at Wisconsin's long-standing commitment to open government. *376 See, e.g., Democratic Party of Wisconsin v. Wisconsin Dep't of Justice, 2016 WI 100, 372 Wis. 2d 460, 888 N.W.2d 584.
¶ 52. Once more a majority of this court reverses a unanimous court of appeals decision affirming a circuit court order requiring the release of records to the public, further undermining the principle that Wisconsin Public Records Law be construed "in every instance with a presumption of complete public access." Wis. Stat. § 19.31.
¶ 53. This time the majority rewrites a federal regulation by deleting the phrase "on behalf of the Service" from the regulatory language in order to reach its conclusion that yet another public records request must fail. Given the cumulative effect of the majority's approach, one wonders if a day will come when we awake to find that this continuous "chipping away" has substantially gutted Wisconsin's commitment to open government.
¶ 54. Contrary to the majority, I agree with the circuit court that Clarke offers no good reason to counter the strong presumption of open access to these public records. I likewise agree with the unanimous court of appeals that the federal regulation does not statutorily exempt immigration detainer forms from release under Wisconsin's Public Records Law. Both the plain language of the federal regulation and its promulgation history establish that it applies only to detainees in the custody of the federal government.
¶ 55. Accordingly, I respectfully dissent.
I
¶ 56. I begin by setting forth more complete facts to provide the necessary context. After new federal guidelines were released, Voces de la Frontera ("Vo- *377 ces") submitted a public records request seeking copies of immigration detainer forms (1-247) issued by ICE to Sheriff Clarke's office. Following a delay without a response, Voces filed an action seeking the issuance of a writ of mandamus to compel the release of the detainer forms under Wisconsin's Public Records Law.
¶ 57. Sheriff Clarke eventually released redacted versions of the requested detainer forms. In reaching a determination about what information to redact, Sheriff Clarke's record custodian explained that she consulted with ICE, and redacted certain information based primarily on ICE's advice.
¶ 58. Voces sought release of unredacted versions of the detainer forms. The circuit court ordered Sheriff Clarke to produce unredacted copies, concluding that Voces made a compelling case that it had a strong interest in ensuring its government was complying with federal guidelines. It further observed that "there was never a very good reason given as to why [] information should be redacted other than ICE [] believes it should be redacted."
¶ 59. Sheriff Clarke appealed, raising a new argument before the court of appeals that an obscure federal regulation, 8 C.F.R. § 236.6, precludes release of the redacted portions of the detainer forms. Relying on undisputed facts, the court of appeals several times observed that Sheriff Clarke "does not dispute the fact that the prisoners in question here were held on state charges which had not expired." Voces De La Frontera, Inc. v. Clarke, 2016 WI App 39, ¶ 28, 369 Wis. 2d 103, 880 N.W.2d 417; see also id., ¶¶ 25, 36.
¶ 60. The court of appeals rejected Sheriff Clarke's new argument, concluding that the plain language of the federal regulation applies only to detainees held on behalf of the federal government. Id.,
*378 ¶ 28. Applying the balancing test, it further determined that Sheriff Clarke failed to meet his burden to overcome the strong presumption in favor of release of the unredacted detainer forms. Id., ¶ 47.
¶ 61. Having been unsuccessful in both the circuit court and the court of appeals, Sheriff Clarke now turns to this court. At issue is whether the detainer forms are statutorily exempt from disclosure pursuant to Wis. Stat. § 19.36(l)-(2).
HH I—i
¶ 62. The parties agree and the majority acknowledges that the requested 1-247 forms are public records as defined by Wis. Stat. § 19.32(2). Majority Op., ¶ 17 n.13. Consequently, any analysis must begin with a strong presumption favoring release of the requested records. See Linzmeyer v. Forcey, 2002 WI 84, ¶ 15, 254 Wis. 2d 306, 646 N.W.2d 811.
¶ 63. The majority contends that read together Wis. Stat. § 19.36(1)-(2) and the federal regulation statutorily preclude release of the I-247 forms.[3] Majority op., ¶ 3. It posits that 8 C.F.R. § 236.6 prohibits release of any information pertaining to individuals *379 detained in a state or local facility, despite the fact that this obscure federal regulation has never before been applied to state or local detainees.[4] See id.
¶ 64. However, the majority's non-textual interpretation is trumped by the regulation's plain language and the agency's intent at the time of the regulation's promulgation. See Gardebring v. Jenkins, 485 U.S. 415, 429-30 (1988). The plain language of 8 C.F.R. § 236.6 provides:
No person, including any state or local government entity or any privately operated detention facility, that houses, maintains, provides services to, or otherwise holds any detainee on behalf of the Service .. . shall disclose or otherwise permit to be made public the name of, or other information relating to, such detainee. . .. (emphasis added).
"Service" refers to the federal government's Immigration and Naturalization Service ("INS").[5] The phrase "on behalf of the Service" indicates that the *380 regulation applies only to detainees being held on behalf of federal immigration authorities.[6]
¶ 65. Likewise, the supplementary information published in the Federal Register in connection with the promulgation of 8 C.F.R. § 236.6 consistently makes clear that the regulation is limited to detainees held "on behalf of federal immigration authorities. Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 68 Fed. Reg. 4364 (Jan. 29, 2003) ("This final rule governs the public disclosure by any state or local government entity... of. . . information relating to any immigration detainee being housed or otherwise maintained . . .on behalf of the Immigration and Naturalization Service (INS or Service)"); 67 Fed. Reg. 19508 (Apr. 22, 2002) ("This rule will establish a *381 uniform policy on the public release of information on Service detainees") (emphasis added).
¶ 66. Despite the plain language of 8 C.F.R. § 236.6 and the clear indications in the Federal Register reiterating that the application of the regulation is limited to detainees in federal custody, the majority concludes otherwise. By positing that the regulation is not limited to detainees in federal custody, i.e. "8 C.F.R. § 236.6 is not temporally limited," the majority imper-missibly rewrites the regulation, deleting words from it. See majority op., ¶ 33.
¶ 67. The majority concedes as reasonable the court of appeals' conclusion that a detainee must be in federal custody at the time the detainer form was served in order for 8 C.F.R. § 236.6 to apply. Majority op., ¶¶ 25, 27. Nevertheless, it deletes words from the federal regulation to embrace an alternative interpretation. Majority op., ¶¶ 33-34.
1 68. The majority embraces a conclusion of ambiguity, as it must, in order to be free to borrow from extrinsic sources to support its contention that the federal regulation applies to any detainee with a federal immigration detainer—even those in state or local custody. Majority op., ¶¶ 27-28. By deleting words from the regulation to render it ambiguous, the majority undermines the principle that statutory exceptions under Wisconsin's Public Records Law must be clear and explicit.
¶ 69. As this court explained, "the general presumption of our law is that public records shall be open to the public unless there is a clear statutory exception . . . Exceptions should be recognized for what they are, instances in derogation of the general legislative intent, and should, therefore, be narrowly construed; and unless the exception is explicit and unequivocal, it *382 will not be held to be an exception." Hathaway v. Joint Sch. Dist. No. 1, City of Green Bay, 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984) (emphasis added). If, as the majority contends, 8 C.F.R. § 236.6 is ambiguous and subject to alternative reasonable interpretations, it follows that the regulation does not present a "clear statutory exception" precluding release of the record to the public. See id.
¶ 70. Further evincing that 8 C.F.R. § 236.6 does not apply here is the fact that neither ICE nor Sheriff Clarke cited 8 C.F.R. § 236.6 as a justification for denying Voces' public records request until this case was on appeal.[7] Such a void highlights that this relatively obscure federal regulation was never intended to apply *383 to detainees in state or local custody. Apparently both were unfamiliar with this obscure regulation upon which Clarke and the majority now rely.
¶ 71. It is not surprising that neither ICE nor Sheriff Clarke was familiar with 8 C.F.R. § 236.6 in this context. After all, this relatively obscure regulation was promulgated to protect information about individuals detained by the federal government on suspicion of terrorism following the attacks of September 11, 2001. See Am. Civil Liberties Union of New Jersey, Inc. v. Cty. of Hudson, 799 A.2d 629, 648 (N.J. App. Div. 2002) ("the real focus of the regulation, as evidenced by the rationale presented in its preamble, may be seen to be on the facilitation of law enforcement efforts in the wake of September 11.").
¶ 72. Indeed, the drafting records of 8 C.F.R. § 236.6 are replete with references to federal 9/11 detainees. Absent from the Federal Register is any mention of the need to prevent the release of information about detainees in state or local custody who may later be transferred to federal custody.[8]
*384 ¶ 73. In sum, I conclude that the plain language of 8 C.F.R. § 236.6 indicates that its application is limited to federal immigration detainees. This conclusion is supported by the promulgation history of the regulation and the fact that neither ICE nor Sheriff Clarke referred to this relatively obscure regulation until this case was on appeal. Accordingly, unlike the majority, I determine that Wis. Stat. § 19.36(1)-(2) when read in conjunction with the entire text of 8 C.F.R. § 236.6 do not statutorily exempt the detainer forms from disclosure.[9]
¶ 74. Having concluded that the distinction between whether a detainee is in federal versus state or local custody is dispositive, I normally would turn next to apply that distinction to this case. But not here.
¶ 75. Before this case reached this court it was undisputed that the detainees in question were in state custody. The court of appeals repeatedly explained, "[i]t is undisputed that Sheriff Clarke held the jail prisoners in state custody and that custody had not expired at the time of the open records requests." Voces De La Frontera, 369 Wis. 2d 103, ¶ 25; see also id., *385 ¶ 28 ("The Sheriff does not dispute the fact that the prisoners in question here were held on state charges which had not expired. . . . Here it is undisputed that the state custody had not ended."); id., ¶ 36 ("Here the twelve detainees were still in custody on their state charges . . . ").
¶ 76. However, during oral argument before this court Sheriff Clarke reneged on the previously uncontested facts. He now asserts that some of the detainees in question were in federal custody at the time Voces submitted this request.
¶ 77. Sheriff Clarke's attempt to reconstruct the factual record at oral arguments is unavailing. He is not requesting, pursuant to Wis. Stat. § 809.15(3), that this court supplement or correct the record because it does not accurately reflect what occurred in the circuit court. Rather, it appears he now wants to create a different factual record. Sheriff Clarke had the burden before the circuit court to present sufficient facts and legal arguments to overcome the presumption favoring release of the requested records. See Fox v. Bock, 149 Wis. 2d 403, 416, 438 N.W.2d 589 (1989). As explained further below, he failed to meet his burden. The time to develop a factual record is before the circuit court, not at oral arguments before this court.
III
¶ 78. Having determined that 8 C.F.R. § 236.6 pertains to detainees in the custody of only the federal government and that no statutory exemptions precluding release apply here, I examine next whether the records should be released. See Linzmeyer, 254 Wis. 2d 306, ¶ 24.
¶ 79. This court applies "a balancing test on a case-by-case basis to determine whether permitting *386 inspection of the records would result in harm to a public interest which outweighs the public interest in opening the records to inspection." Id., ¶ 25 (citation omitted). As the party seeking nondisclosure, Sheriff Clarke has the burden of overcoming the presumption in favor of releasing the requested I-247 forms. See Fox, 149 Wis. 2d at 416.
¶ 80. The balancing test is first applied by the records custodian. Newspapers, Inc. v. Breier, 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979). "If the custodian decides not to allow inspection, he must state specific public-policy reasons for the refusal. These reasons provide a basis for review in the event of court action." Id. (citations omitted); Fox, 149 Wis. 2d at 416-17.
¶ 81. Here, the records custodian explained that her decision to redact information from the 1-247 forms was made pursuant to guidance provided by ICE. She stated, "[w]e work with other law enforcement agencies and if they tell me one of their numbers ... is law enforcement sensitive, yes, I believe them." The records custodian did not cite 8 C.F.R. § 236.6 or another public policy reason as justification for her decision to not fully comply with Voces' public records request.
¶ 82. Nevertheless, the majority declares, "it is sufficient that [the records custodian] recognized that 1-247 forms may contain sensitive information and accordingly took measures to ensure that such information was not improperly released" because "[w]e cannot expect a records custodian to have expertise in federal immigration law . . . ." Majority op., f 5 n.5.
¶ 83. On appeal, Sheriff Clarke argues that "[t]he balancing test requires consideration of Wisconsin's presumption of privacy with respect to law enforcement records and personally identifiable informa *387 tion . . . He also cites several FOIA factors generally-supporting these two public policies.
¶ 84. The need to protect privacy of law enforcement records is a valid public policy concern. Linzmeyer, 254 Wis. 2d 306, ¶ 30 (explaining that records of law enforcement investigations can be particularly sensitive and "are generally more likely than most types of public records to have an adverse effect on other public interests if they are released."). Additionally, as the Linzmeyer court explained, if the release of a police record would interfere with an on-going prosecution or investigation, the general presumption of openness will likely be overcome. Id.
f 85. Here, however, Sheriff Clarke provides no details about how the information contained in the 1-247 forms would actually affect the privacy concerns for law enforcement records or interfere with an ongoing prosecution or investigation. Unlike a police report which contains details about a specific crime under investigation, the detainer forms contain generalized information, much of which Sheriff Clarke already disclosed on his website.
f 86. For example, evidence introduced in the circuit court revealed that during the course of this litigation, Sheriff Clarke's office posted on its website information about detainees in his custody. Four separate posts were introduced with each containing the name of a detainee, his photograph and other personally identifying information. In bold letters above each photograph appeared the word "Hold." Below the photograph appeared information that indicated that it was an immigration or ICE hold. This evidence undermines Clarke's purported privacy concerns about ICE holds.
*388 ¶ 87. Sheriff Clarke further argues that the strong public interest in protecting a detainee's privacy and reputation precludes release of the records. Yet, Sheriff Clarke's concern about the detainees' privacy interests rings hollow considering the disclosures he made on his website of some of the very information he now seeks to withhold from Voces. Before the circuit court Voces questioned:
[I]s it accurate to say that the only difference between what Sheriff Clarke sua sponte on his own behalf publishes on his website about the immigration status of individuals in his custody and what is on the form and what has been redacted by Sheriff Clarke on this form under the pretext of a concern for individual privacy is that Voces' ability to monitor and surveil compliance with administrative priorities is impaired . . . ?
¶ 88. On the other side of the balancing test is Voces attempt to provide public oversight of law enforcement and immigration law implementation, specifically to ensure that Sheriff Clarke's office is complying with federal and state law. Before the circuit court, Voces explained that it has an interest in monitoring and collecting data to ensure that Sheriff Clarke's office is complying with federal immigration guidelines. Voces also expressed concern that noncompliance with federal guidelines would hinder law enforcement abilities by eroding public trust and collaboration between law enforcement and immigrant communities. The circuit court found these interests to be "compelling." I agree.
¶ 89. Further weighing in favor of disclosure is the fact that Voces seeks information about the actions of an elected official. See Democratic Party of Wisconsin, 372 Wis. 2d 460, ¶ 18 (citing Linzmeyer, 254 *389 Wis. 2d 306, ¶ 29). Additionally, "the process of police investigation is one where public oversight is important." Linzmeyer, 254 Wis. 2d 306, ¶ 27.
¶ 90. Sheriff Clarke points to the important public interests of the need to protect "privacy with respect to law enforcement records and personally identifiable information." Nevertheless, on balance, I conclude that he has failed to meet his burden. Sheriff Clarke has not established that the release of the 1-247 forms would result in harm to the public interest outweighing the strong public interest in providing public oversight of an elected official to ensure compliance with federal and state law. Accordingly, I would affirm the court of appeals decision ordering the unredacted release of the 1-247 forms.
¶ 91. For the foregoing reasons, I respectfully dissent.
f 92. I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

 A "hail mary" is "a long forward pass in football, especially as a last-ditch attempt at the end of a game, where completion is considered unlikely." Random House Unabridged Dictionary 859 (2d ed. 1993).

 Wisconsin Stat. § 19.36(l)-(2) (2013-14) provide:
(1) Any record which is specifically exempted from disclosure by state or federal law or authorized to be exempted from disclosure by state law is exempt from disclosure under s. 19.35(1), except that any portion of that record which contains public information is open to public inspection as provided in sub. (6).
(2) Except as otherwise provided by law, whenever federal law or regulations require . . . that any record relating to investigative information obtained for law enforcement purposes be withheld from public access, then that information is exempt from disclosure ....

 Neither the majority nor the parties cite to any case that has previously applied 8 C.F.R. § 236 to detainees in state or local custody. Additional research yielded no such case.

 The INS promulgated 8 C.F.R. § 236.6 as an interim rule in April 2002, and adopted it as a final rule without change in January 2003. Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 67 Fed. Reg. 19508-11 (Apr. 22, 2002); 68 Fed. Reg. 4364-67 (Jan. 29, 2003). In March 2003, pursuant to the Homeland Security Act of 2002, INS was disbanded and replaced with three new federal agencies, one of which is ICE. U.S. Citizenship and Immigration Services, Overview of INS History 11 (2012), https://www.uscis.gov/sites/default/files/USCIS/History %20and%20Genealogy/Our%20History/INSHistory/INSHistory. pdf. Therefore, in the context of this discussion of 8 C.F.R. § 236.6, references to the INS and ICE are used interchangeably.

 Receipt of an 1-247 form by a state or local law enforcement agency does not convert a state or local detainee into a federal detainee in the custody of ICE. The language of the 1-247 form explains that it is simply a request from ICE to a state or local agency: "IT IS REQUESTED THAT YOU: Maintain custody of the subject for a period not to exceed 48 hours . . . beyond the time when the subject would have otherwise been released from your custody to allow DHS to take custody of the subject" (emphasis in the original).
Additionally, a federal regulation explains that a detainer serves to advise another law enforcement agency that the federal government seeks custody of a detainee presently in the custody of a state or local agency. 8 C.F.R. § 287.7(a); see also Galarza v. Szalczyk, 745 F.3d 634, 642 (3rd Cir. 2014) ("[D]etainers are not mandatory."); Milwaukee County Board of Supervisors, Resolution 12-135 (June 4, 2012), https://milwaukeecounty.legistar.com/LegislationDetail.aspx? ID=1124069&GUID=3D583485-4F01-4B43-B892-D6FFE5D 327BF ("[D]etainers are not mandatory but are considered 'requests'").

 At oral arguments, counsel revealed that Sheriff Clarke's office consulted with two different ICE representatives and the ICE representatives did not cite 8 C.F.R. § 236.6 as justification for denying the release of the requested 1-247 forms:
The Court: [D]id ICE tell the Sheriffs office you cannot release any information or these records pursuant to 8 C.F.R. § 236.6?
Counsel for Sheriff Clarke: They were not provided with that advice, no. The advice they received was certain specific information on these forms should be redacted and here are the reasons why under federal law under FOIA (Freedom of Information Act) ICE believed the information should be protected.
The Court: Then it doesn't appear that ICE was applying § 236.6 to these forms because they oked the release of the names among other arguably personal identifiable information.
Counsel for Sheriff Clarke: It appears that way. 236.6 is a relatively obscure provision and why it wasn't relied upon at the trial court level I am not sure. But I think it clearly applies to the facts of this case.
The Court: But not just at the trial court level, ICE itself was not applying 236, or were they?
[[Image here]]
*383 Counsel for Sheriff Clarke: At the time of the open records request ICE did not tell Milwaukee County don't produce them because 236 applies.

 See e.g., Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 67 Fed. Reg. 19510 (Apr. 22, 2002) ("Disclosure could reveal important information about the direction, progress, focus and scope of investigations arising out of the attack on September 11, 2001, and thereby assist terrorist organizations in counteracting investigative efforts of the United States. ... In light of the national emergency declared by the President. . . with respect to the terrorist attacks of September 11, 2001, and the continuing threat by terrorists to the security of the United States, and the need immediately to *384 control identifying or other information pertaining to Service detainees . . . ."); see also 68 Fed. Reg. 4366 (Jan. 29, 2003).

 The majority further missteps by concluding that the requested 1-247 forms are exempt in their entirety without analysis of the possibility of redaction. Majority op., ¶ 3. In so doing, the majority disregards the statutory requirement that when a record contains some information subject to disclosure and other information that is not, the record custodian "shall provide the information that is subject to disclosure and delete the information that is not subject to disclosure from the record before release." Wis. Stat. § 19.36(6). Thus, once again, a majority of this court "renders meaningless the statutory direction to redact." Democratic Party of Wisconsin, 372 Wis. 2d 460, ¶ 121 (Abrahamson, J., dissenting).