Armand LINZMEYER, Plaintiff-Appellant,

v.

D.J. FORCEY, Defendant-Respondent.

Supreme Court

*No. 01–0197. Oral argument May 2, 2002.—Decided July 2, 2002.*

**2002 WI 84**

(Also reported in 646 N.W.2d 811.)

308

310

For the plaintiff-appellant there was a brief by *Leonard D. Kachinsky* and *Kachinsky & Petit Law Offices,* Neenah, and oral argument by *Leonard D. Kachinsky.*

For the defendant-respondent there was a brief (in the court of appeals) by *James B. Gunz,* city attorney, Neenah.

An amicus curiae brief was filed by *Robert J. Dreps, Kendall W. Harrison* and *La Follette Godfrey & Kahn,* Madison, on behalf of the Wisconsin Newspaper Association, the Wisconsin Broadcasters Association, the Wisconsin Freedom of Information Council, and the Post-Crescent, with oral argument by *Kendall W. Harrison.*

An amicus curiae brief was filed by *Gordon E. McQuillen,* Madison, on behalf of the Wisconsin Professional Police Association.

An amicus curiae brief was filed (in the court of appeals) by *Bruce Meredith, Melissa A. Cherney,* and *Chris Galinat,* Madison, on behalf of the Wisconsin Education Association Council, with oral argument by *Bruce Meredith.*

¶ 1. JON P. WILCOX, J. In this case, we review a circuit court judgment that allowed the release of a Neenah Police Department (NPD) report under the Wisconsin Open Records Law, Wis. Stat. § 19.31–.39 (1999–2000).[1] The police report was made pursuant to an investigation of Armand Linzmeyer, a teacher at Neenah High School (NHS). The investigation on

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

312

which the report was based did not lead either to Linzmeyer's arrest or his prosecution, and the Neenah Joint School District did not use the report to initiate any administrative disciplinary action against Linzmeyer. The investigation was closed by the time the open records request was made.

¶ 2. The Appleton *Post-Crescent* newspaper ("the *Post-Crescent*") and the parents of two NHS students sought release of the investigation report. The Neenah City Attorney planned to release the report in the absence of judicial action. Linzmeyer then sought an injunction from the circuit court to prevent release of the report.

¶ 3. The Winnebago County Circuit Court, Barbara H. Key, Judge, concluded that the public's interest in the disclosure of the report outweighed the public's interest in the protection of Linzmeyer's reputation or privacy, and denied Linzmeyer's request for an injunction. Linzmeyer appealed the decision, and the court of appeals certified the case to this court. We accepted the certification, and we now affirm the circuit court's ruling and remand the case to the circuit court to assess what, if any, redaction is necessary.

I

¶ 4. The essential facts of the case are not in dispute. Linzmeyer was a mathematics teacher and the girls' volleyball coach at NHS. During November and December 2000, the NPD conducted an investigation into allegations that Linzmeyer had made inappropriate statements to, and had engaged in inappropriate

313

conduct with, a number of his female students.[2] The investigation was triggered by allegations from two of Linzmeyer's students and involved interviews of more than 20 students. As a result of the investigation, NPD created Report No. 00–11938 ("the Report"), which was a compilation of information obtained by the NPD during its investigation of Linzmeyer. Respondent D.J. Forcey, as the chief of police, was the custodian of the Report.

¶ 5. Linzmeyer was neither arrested nor prosecuted based on any information contained in the Report. Additionally, the Neenah Joint School District did not take any administrative disciplinary action against Linzmeyer as a result of the Report or as a result of any information contained therein. The school district reassigned Linzmeyer to other duties and Linzmeyer agreed to resign his position at the end of the school year.

¶ 6. The parents of the two students whose allegations had initiated the investigation, along with the *Post-Crescent,* requested release of the Report under the open records law. Linzmeyer subsequently filed suit in the Winnebago County Circuit Court, seeking an injunction to block the release of the Report.

¶ 7. At a hearing on January 11, 2001, the Neenah City Attorney, James Gunz, confirmed that no enforcement action was contemplated against Linzmeyer as a result of the Report. Gunz also stated that the City intended to release the report in a redacted form, based on the policy favoring the release of public

---

[2] However, none of the complaints against Linzmeyer alleged sexual assault or any other type of assaultive behavior.

records. After reviewing the report independently, the circuit court denied Linzmeyer's request for an injunction.

¶ 8. The circuit court held that, as a public record, the Report carried the presumption of complete access, which could only be overcome by an overriding public interest in keeping the records confidential. The court noted that, as a public school teacher, Linzmeyer was in a position of public trust. Thus, the public had an interest in knowing the circumstances surrounding the accusation that Linzmeyer had made inappropriate remarks toward students. The circuit court noted that, although the information was embarrassing and might harm Linzmeyer's reputation, the statements Linzmeyer was accused of having made were spoken in open class in front of large groups of students, and many were corroborated by other students or later admitted by Linzmeyer himself, thus countering Linzmeyer's privacy argument. The circuit court concluded that the public's interest in disclosure outweighed the public's interest in Linzmeyer's reputation or privacy, and denied the injunction.

¶ 9. The circuit court then granted Linzmeyer a temporary injunction so he could seek an appeal. The court of appeals granted Linzmeyer leave to appeal the circuit court's order, and certified the appeal to this court. We accepted the certification and we now affirm the circuit court's order. We hold that the open records law applies to the Report in this case and there is thus a strong presumption in favor of release. Additionally, we hold that the presumption was not overridden in this case by the public interest in protecting Linzmeyer's privacy and reputation.

## II

¶ 10. We address the issues presented here in two steps. First, we determine whether the open records law applies to the record in question here—the report of a police investigation where the investigation has been closed, and where no enforcement action has been taken or is contemplated. In determining whether the open records law applies, we look at the statutory language of that law, along with its statutory and common law exceptions. If the basic open records law applies, there are no blanket exceptions from release, other than those provided by the common law or statute. *Woznicki v. Erickson,* 202 Wis. 2d 178, 183, 549 N.W.2d 699 (1996). Here, we hold that the open records law applies, and that no statutory or common law exceptions exempt the Report from release.

¶ 11. Because we hold that the open records law applies to the Report, our second issue is whether the presumption of openness under the open records law is overcome by any other public policy. We have recognized that the policy toward openness, although strong, is not absolute. *Milwaukee Teachers' Educ. Ass'n v. Bd. of Sch. Dirs.,* 227 Wis. 2d 779, 787, 596 N.W.2d 403 (1999). In the absence of a statutory or common law exception, the presumption favoring release can only be overcome when there is a public policy interest in keeping the records confidential. *Wis. Newspress v. Sheboygan Falls Sch. Dist.,* 199 Wis. 2d 768, 776, 546 N.W.2d 143 (1996) (citing *Hathaway v. Green Bay Sch. Dist.,* 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984)). Thus, our second step is to determine if there is a public policy that overrides the presumption of openness.

¶ 12. To determine whether the presumption of openness is overcome by another public policy concern, we apply the balancing test articulated by this court in

*Woznicki v. Erickson,* 202 Wis. 2d 178, and *Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 279 N.W.2d 179 (1979). That is, we must weigh the public policies not in favor of release against the strong public policy that public records should be open for review. In weighing the public policies for and against release in this case, we also take the opportunity to provide some guidance on dealing with the open records law as it relates to police records, and we attempt to identify factors that should be taken into consideration by records custodians before law enforcement records are publicly released. In this case, however, we ultimately conclude that the presumption for openness is not overcome by any other public policy, and we thus affirm the order of the circuit court.

### A

■

¶ 13. Our first issue is whether the open records law applies to the Report in this case. To decide this question, we apply the open records law to an undisputed set of facts. This is a matter of statutory interpretation, which we review independently of the lower courts, but benefiting from their analyses. *Milwaukee Teachers,* 227 Wis. 2d at 788.

¶ 14. The legislature has clearly articulated the policy regarding the release of government records in Wis. Stat. § 19.31. In that section, the legislature stated:

> . . . [I]t is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. Further, providing persons

with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

Additionally, Wis. Stat. § 19.35(1)(a) provides that:

Except as otherwise provided by law, any requester has a right to inspect any record. Substantive common law principles construing the right to inspect, copy or receive copies of records shall remain in effect. . . .

■

¶ 15. As we have consistently recognized, the clearly stated, general presumption of our law is that all public records shall be open to the public. *Wis. Newspress,* 199 Wis. 2d at 776. This presumption reflects the basic principle that the people must be informed about the workings of their government and that openness in government is essential to maintain the strength of our democratic society. *Breier,* 89 Wis. 2d at 433–34. Here, the parties do not dispute the fact that the Report is a public record, as defined by Wis. Stat. § 19.32(2).[3] So as with other public records, we begin with the strong presumption favoring release of the Report.

---

[3] "Record" is defined as "any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless of physical form or characteristics, which has been created or is being kept by an authority . . . ." Wis. Stat. § 19.32(2).

¶ 16. Given that the open records law generally applies, we next examine several relevant statutory exceptions that could arguably exempt the Report from release under the open records law. Upon review, however, we hold that none of them prevent the open records law from applying to the present case.

■

¶ 17. We first look at Wisconsin Stat. § 19.35(1)(am). That section provides, in relevant part:

. . . [A]ny requester who is an individual or person authorized by the individual, has a right to inspect any record containing personally identifiable information pertaining to the individual that is maintained by an authority and to make or receive a copy of any such information. The right to inspect or copy a record under this paragraph does not apply to . . .

. . . .

1. Any record containing personally identifiable information that is collected or maintained in connection with a complaint, investigation or other circumstances that may lead to an enforcement action, administrative proceeding, arbitration proceeding or court proceeding, or any such record that is collected or maintained in connection with such an action or proceeding. . . .

2. Any record containing personally identifiable information that, if disclosed, would do any of the following:

a. Endanger an individual's life or safety.

b. Identify a confidential informant.

c. Endanger the security, including the security of the population or staff, of any

state prison . . . secured correctional facil-
ity, . . . secured child caring institution, . . .
secured group home, . . . mental health in-
stitute, . . . or center for the developmen-
tally disabled. . . .

 d. Compromise the rehabilitation of a
person in the custody of the department of
corrections or detained in a jail or facility
identified in subd. 2. c.

These sections clearly prevent the release of law en-
forcement records under some circumstances. However,
they do not apply to the Report in this case.[4] Section
19.35(1)(am)1 exempts records from release when they
are collected or maintained "in connection with a com-
plaint, investigation or other circumstances *that may
lead to* an enforcement action, administrative proceed-
ing, arbitration proceeding or court proceeding" (em-
phasis added). This is not the situation here, where the
investigation has been closed and where it has been
confirmed that there is no chance that the Report will
"lead to an enforcement action."

 ¶ 18. The exception under subparagraph (am)1
would most likely apply to a police investigation that
was still on-going, an investigation where the govern-
ment was still contemplating prosecution, or an inves-
tigation that overlapped with other on-going cases.

---

 [4] Because Wis. Stat. § 19.35(1)(am) only applies to "[A]ny
requester who is an individual or person authorized by the
individual" who requests the release of "any record containing
personally identifiable information pertaining to the indi-
vidual," this section does not apply to the request made by the
*Post-Crescent* in this case. Our analysis of sub. (1)(am) is only as
the section applies to the families of the two students who
requested release of the report, assuming that they are "autho-
rized" by the students identified in the Report.

Here, however, the Report is a closed police file, where no enforcement action was ever taken against the subject, where it has been confirmed that no enforcement will be taken in the future, and where the investigation was not related to any other on-going investigations. Thus, Wis. Stat. § 19.35(1)(am)1 does not exempt the Report from release under the open records law.

■

¶ 19. The exception in subparagraph 2 of that same section also does not apply. No correctional institution or other confinement facility was involved, there is no evidence of anyone's life or safety being at risk, and none of the students interviewed was a confidential informant.

■

¶ 20. Likewise, Wis. Stat. § 19.36(8)(b) does not exempt the Report from disclosure. At most, that section might require the redaction of the identities of the persons interviewed by the NPD during the course of the investigation. Section 19.36(8)(b) provides:

> If an authority that is a law enforcement agency receives a request to inspect or copy a record or portion of a record under s. 19.35(1)(a) that contains specific information including but not limited to a name, address, telephone number, voice recording or handwriting sample which, if disclosed, would identify an informant, the authority shall delete the portion of the record in which the information is contained or, if no portion of the record can be inspected or copied without identifying the informant, shall withhold the record unless the legal custodian of the record, designated under s. 19.33, makes a determination, at the time that the request is made, that the public interest in allowing a person to inspect, copy or receive a copy of such

identifying information outweighs the harm done to the public interest by providing such access.

Wis. Stat. § 19.36(8)(b). An informant, under the statute is:

> an individual who requests confidentiality from a law enforcement agency in conjunction with providing information to that agency or, pursuant to an express promise of confidentiality by a law enforcement agency or under circumstances in which a promise of confidentiality would reasonably be implied, provides information to a law enforcement agency or, is working with a law enforcement agency to obtain information, related in any case to any of the following:
>
> a. Another person who the individual or the law enforcement agency suspects has violated, is violating or will violate a federal law, a law of any state or an ordinance of any local government.
>
> b. Past, present or future activities that the individual or law enforcement agency believes may violate a federal law, a law of any state or an ordinance of any local government.

Wis. Stat. § 19.36(8)(a)1. Although the complainants and a number of other students cooperated with the NPD during the investigation, none apparently did so in exchange for a promise of confidentiality. Although it is arguable that some of the students may have acted under circumstances that reasonably implied a promise of confidentiality, this court is not in a position to determine whether that was the case. If any redaction of personal information is necessary, it is more appropriate that the circuit court assess what specific infor-

mation must be redacted.[5] Even if redaction is necessary, however, this section does not bar the release of the Report as a whole.

■

¶ 21. Section 19.36(2) could also potentially apply to exclude a law enforcement report from release under the open records law. That section provides:

> Except as otherwise provided by law, whenever federal law or regulations require or as a condition to receipt of aids by this state require that any record relating to investigative information obtained for law enforcement purposes be withheld from public access, then that information is exempt from disclosure under s. 19.35(1)(am).

Linzmeyer, however, does not show us any federal laws or regulations of the type required that would mandate withholding of the record in this case. Thus, we conclude that this section does not prevent the application of the open records law to the Report.

■

¶ 22. Finally, we consider Wis. Stat. § 19.85(1). That section states:

> Any meeting of a governmental body, . . . may be convened in closed session under one or more of the exemptions provided in this section. . . . A closed session may be held for any of the following purposes:
>
> . . . .
>
> (b) Considering dismissal, demotion, licensing or discipline of any public em-

---

[5] Although we do not make an explicit ruling on redaction here, we anticipate that redaction will likely be necessary. In a January 2, 2001, letter to Linzmeyer's attorney, Neenah City Attorney James Gunz expressed that the City's original intention was to release the Report in a redacted form.

ployee or person licensed by a board or commission or the investigation of charges against such person, or considering the grant or denial of tenure for a university faculty member, and the taking of formal action on any such matter; . . .

. . . .

(f) Considering financial, medical, social or personal histories or disciplinary data of specific persons, preliminary consideration of specific personnel problems or the investigation of charges against specific persons except where par. (b) applies which, if discussed in public, would be likely to have a substantial adverse effect upon the reputation of any person referred to in such histories or data, or involved in such problems or investigations.

This statutory section certainly indicates a policy toward protecting information involved in disciplinary actions against public officials. However, to hold that the Report is exempted from the open records law under this section is quite a stretch. First, this section specifically applies to meetings of government bodies, of which the Report is not part. Second, even if we held that the Report did qualify under this section, this statute, like Wis. Stat. § 19.35(1)(am)1, contemplates the potential for disciplinary action. As a closed investigation with no potential for future action, the Report clearly falls outside of the scope of this exemption.

■

¶ 23. Finally, Linzmeyer does not show us any common law exception to the open records law that would exempt the Report in this case from release. Thus, because the Report is a public record under the

open records law, and there is no statutory or common law exception, we conclude that the open records law applies, and that the presumption of openness attaches to the Report.

B

¶ 24. Because we hold that the presumption of openness applies to the Report, we must next decide whether that presumption can be overcome by a public policy favoring non-disclosure of the Report. The fundamental question we must ask is whether there is harm to a public interest that outweighs the public interest in inspection of the Report. *Breier,* 89 Wis. 2d at 433. This is a question of law, which we review de novo. *Id.* at 427.

¶ 25. In determining whether a public policy exists to overcome the presumption of openness, we apply a balancing test on a case-by-case basis to determine whether permitting inspection of the records would result in harm to a public interest which outweighs the public interest in opening the records to inspection. *Woznicki,* 202 Wis. 2d at 183–84. If the harm to the public interest caused by release overrides the public interest in release, the inspection of the public records may be prevented in spite of the general policy of openness. *Id.*

¶ 26. In this case, we are dealing with the record of a police investigation, so we take special care as we balance the public policies. Reports of police investigations, despite being public records, can be particularly sensitive regardless of whether or not the underlying

investigations are on-going. Custodians of police records thus have the difficult responsibility of weighing the public policies for and against release. Because of the sensitivity of law enforcement records, we take particular note of several important public policies that weigh for and against their release. In doing so, however, we ultimately disagree with Linzmeyer's argument, and hold that the public policy favoring release has not been overcome in this particular case.

¶ 27. There are a number of matters of public interest that support the release of the Report. First, the process of police investigation is one where public oversight is important. The ability of police to investigate suspected crimes is an official responsibility of an executive government agency, and much like the ability to arrest, it represents a significant use of government personnel, time, and resources. *See Breier,* 89 Wis. 2d at 436. The investigative process is one that, when used inappropriately, can be harassing or worse. The investigating agency's decisions regarding whom to interview, which leads to follow, and when to recommend further action to prosecuting authorities are also discretionary, and are generally matters of public interest that support public release of the Report.

¶ 28. Additionally, as a public school teacher, Linzmeyer is a public employee in a position of some visibility. This likewise supports public scrutiny of potential misconduct, particularly if it occurs in the school and classroom settings. As the court of appeals noted in *Journal/Sentinel v. Shorewood School Board,* 186 Wis. 2d 443, 459, 521 N.W.2d 165 (Ct. App. 1994), "[a]ll officers and employees of government are, ultimately, responsible to the citizens, and those citizens have a right to hold their employees accountable for the

job they do." *See also State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 685, 137 N.W.2d 470 (1965). Here, the misconduct allegedly occurred in the location where the public has entrusted him to work and during the performance of his public duties, and therefore should be more subject to scrutiny.

¶ 29. Understandably, the mere fact that Linzmeyer is a public employee does not weigh as strongly for release of the Report as it might if Linzmeyer were an elected official, or if he were a more senior policy-making official within the school district. Still, as a teacher, Linzmeyer is in the public eye, and is charged with the important societal responsibility of educating children. Thus, Linzmeyer's position is one where the public should be able to expect some increased accountability.

¶ 30. Still, despite the factors that support opening the record to the public, the Report is a record of a law enforcement investigation which, as we have noted, can be particularly sensitive. Law enforcement records are generally more likely than most types of public records to have an adverse effect on other public interests if they are released. First and foremost, there is a strong public interest in investigating and prosecuting criminal activity, and when the release of a police record would interfere with an on-going prosecution or investigation, the general presumption of openness will likely be overcome. Similarly, the release of some police records might endanger the safety of persons involved in that report—another strong public policy reason which would work against release.

¶ 31. As we have found in other cases, the public interest in protecting the reputation and privacy of

citizens may also be a factor that favors nonrelease. *Woznicki*, 202 Wis. 2d at 187; *Breier*, 89 Wis. 2d at 430; *Youmans*, 28 Wis. 2d at 685. This public interest is *not* equivalent to an individual's personal interest in protecting his or her own character and reputation. For instance, we have recognized that the disclosure of certain public records might result in fewer qualified applicants for public positions where their privacy would be regularly intruded upon. *Vill. of Butler v. Cohen*, 163 Wis. 2d 819, 831, 472 N.W.2d 579 (Ct. App. 1991). Similarly, some personnel files might not be releaseable because the persons whose records are released might be less willing to testify in court when faced with the potential that they would be cross-examined on the contents of their personnel file. *Id.* Thus, the public interest in protecting individuals' privacy and reputation arises from the public effects of the failure to honor the individual's privacy interests, and not the individual's concern about embarrassment.

¶ 32. We note that the federal Freedom of Information Act (FOIA), 5 U.S.C. 552 (2000), quite concisely lists factors that support these public policies. Under 5 U.S.C. 552(b)(7), the FOIA exempts law enforcement records from public disclosure under the following circumstances:

> [when] the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, . . . , (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if

such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

■

¶ 33. Admittedly, there is some overlap between the FOIA policies, the statutory exemptions in the Wisconsin open records law, and the public policies that we have already identified. However, when coupled with our prior caselaw, these factors provide a framework that records custodians can use to determine whether the presumption of openness in law enforcement records is overcome by another public policy. Applying this framework to the present case, we conclude that the public interests in preventing disclosure do not outweigh the public interest in release of the information.

¶ 34. Linzmeyer relies heavily on our stated public policy of protection of privacy to argue that the circuit court incorrectly weighed this public interest against the public interest in open records, and that the public interest in protecting Linzmeyer's reputation and privacy outweigh the public interest in release of the Report. We disagree.

¶ 35. Having reviewed the Report, we admit that release of the Report could cause some embarrassment to Linzmeyer and that it could possibly cause some damage to his reputation. However, as we have mentioned, it is not Linzmeyer's personal embarrassment that we are concerned about in applying this test. Rather, we must ask whether releasing the Report under the present circumstances would affect any *public* interest.

¶ 36. Linzmeyer fails to show us how this embarrassment would give rise to a public interest in protect-

ing his reputation. This is a police report, which details information surrounding allegations of misconduct by Linzmeyer that occurred at school and in the classroom. Its release will not dissuade qualified persons from applying to be teachers, as the release of their personnel files might. *See Vill. of Butler,* 163 Wis. 2d at 831. Similarly, it will not impede the ability of the vast majority of teachers to perform their jobs. If there is any negative effect from the release of the Report, it will be on Linzmeyer as an individual, and not on the public interest.

¶ 37. To the contrary, a number of the characteristics of this specific case actually undercut the notion that a public interest would be damaged by the release of the Report. First, the allegations against Linzmeyer involved possible inappropriate interactions with his students. The statements in question were made publicly, and many were corroborated by other students, or even admitted by Linzmeyer himself. As the court of appeals has previously recognized, information that is already known to the public is germane to the balancing test. *Kailin v. Rainwater,* 226 Wis. 2d 134, 148, 593 N.W.2d 865 (Ct. App. 1999). The fact that much of the activity was already public, and could be corroborated, mitigates, to some extent, any embarrassment that might be caused by the release of the Report, and tends to even weigh in favor of release.

¶ 38. We caution, however, that this is not an attribute of many police reports. Police reports regularly contain raw investigative data, which is gathered from witnesses of varying degrees of reliability. It would not be unusual to find statements in a police report involving rumor, multiple levels of hearsay, or other characteristics that make the veracity of the statements questionable. Likewise, witnesses who have a bias

against the subject of the investigation may have been interviewed. The release of this type of information—unlike here, where the actions in question were public and well-corroborated—would weigh more greatly in favor of the public policy of protecting a person's reputation interests, and would likely support nondisclosure of the record.

¶ 39. Additionally, the release of the Report will not impede the public policy of investigating and prosecuting criminal activity. First, there is no way that release could reasonably be expected to interfere with on-going enforcement proceedings. This is particularly true because the investigation has been closed and no further enforcement or disciplinary proceedings based on the investigation are contemplated. For similar reasons, release of the Report would not deprive anyone of a right to a fair trial or an impartial adjudication. In sum, we see no way that the release of the Report would affect on-going enforcement proceedings.

¶ 40. Furthermore, for reasons we discussed above, the release of the Report could not reasonably be expected to disclose the identity of a confidential source, primarily because there was no confidential informant. Understandably, the students who were interviewed may have some privacy interest in protecting their own identities, both because they participated with the investigation and because they are minors. However, to the extent that those privacy interests are implicated, they could be protected by a redaction of the Report in accordance with Wis. Stat. § 19.36(6).

¶ 41. There is also no threat that techniques and procedures for law enforcement investigations or prosecutions would be revealed if the Report is disclosed. The investigation here consisted of a series of interviews—a well known and widely practiced police investigation technique. This was not a sting operation

331

or undercover operation that would require secrecy to protect the identity of particular sources and techniques. We also note that there is very little chance that the release of the Report would reasonably be expected to endanger the life or physical safety of any individual.

¶ 42. In sum, we hold that there is no public policy which, in this case, would overcome the presumption of openness. We caution, however, that this does not mean that all police records are immediately open to complete public disclosure, simply because there is a decision not to charge. We emphasize again that the balancing test must be done on a case-by-case basis, to ensure that the public policies for and against release are assessed.

### III

¶ 43. We conclude that the open records law does apply to the Report in this case. Linzmeyer is unable to show us any statutory or common-law exceptions that would take the Report out of the purview of the open records law. Additionally, Linzmeyer has not shown a public policy that would override the general public policy, which requires public records to be open to public disclosure. Thus, we affirm the decision of the circuit court and remand the case for appropriate redaction, if necessary.

*By the Court.*—The order of the circuit court is affirmed and the cause is remanded.

¶ 44 SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring).* I join the opinion. I write to express my concern whether all the persons have been notified or will be notified of the release of the records as required by *Woznicki v. Erickson,* 202 Wis. 2d 178, 549 N.W.2d 699 (1996) (Abrahamson, J., dissenting) and

*Milwaukee Teachers' Educ. Ass'n v. Milwaukee Bd. of School Directors*, 227 Wis. 2d 779, 596 N.W.2d 403 (1999). Unfortunately I must accept *Woznicki* as binding precedent.