¶ 1.
REBECCA GRASSL BRADLEY, J.
This is a review of an unpublished court of appeals' opinion and order,[1] which affirmed the circuit court's order[2] granting a writ of mandamus compelling the Wisconsin Department of Justice to disclose two video recordings requested by the Democratic Party of Wisconsin under Wisconsin's Public Records Law, Wis. Stat. §§ 19.31-39 (2013-14).[3] We are asked to decide whether the justification for nondisclosure outweighs Wisconsin's commitment to public access to government records. We conclude that the reasons given by the record custodian for nondisclosure sufficiently demonstrate that the legislative presumption in favor of disclosure has been outweighed by the public harm that would result from disclosure. We reverse the decision of the court of appeals and deny the writ of mandamus.
I. BACKGROUND
¶ 2. In September 2014, Cory Liebmann, Research Director for the Democratic Party of Wisconsin, submitted a public records request to the Wisconsin Department of Justice. The request asked for the release of
[a]ny and all photographs, films, and tape recordings including but not limited to computer tapes and print *466 outs, CDs, DVDs, videotapes and optical discs of any presentation made at any training program by Brad Schimel on the following dates: May 14, 2013; June 8, 2012; November 8, 2012, May 20, 2010; June 17, 2009.
¶ 3. Kevin Potter, the Department of Justice's Record Custodian, responded to the request by letter in October 2014. Potter explained the DOJ had "identified two records responsive to [Liebmann's] request: one video recording of a presentation made by Mr. Schimel on May 14, 2013 on the topic of victim confidentiality and one video recording of a presentation on June 17, 2009 concerning the prosecution of, and common defenses in online child exploitation cases." Both videos were recordings of presentations Attorney Schimel[4] gave at Wisconsin State Prosecutors Education and Training conferences. The subject matter of the 2013 conference was "Protecting Victims of Crime" and Attorney Schimel's segment addressed "Victim Confidentiality." Attorney Schimel's presentation at the 2009 conference addressed "Prosecution [and] Common Defenses in Online Child Exploitation Cases." These conferences were training sessions for prosecutors and victims' rights advocates, with some law enforcement representatives present. Attendance was limited to those groups and not open to the public *467 or the media. The videos were not publicly available but were recorded and stored so that prosecutors who were not able to attend could view the educational training at a later date.[5]
¶ 4. Potter explained that neither recording would be released because, after applying the public records balancing test, he concluded the public interest in nondisclosure outweighed the general presumption favoring release. Potter gave specific reasons for his conclusion particular to each recording, with some overlap. The 2009 recording would not be released because (1) the presentation contained specific litigation strategies for online child exploitation cases, disclosure of which would impede effective investigation and prosecution of sexual predators; (2) the prosecutor training programs are similar to the contents of a prosecutor's case files, which are exempt from disclosure under State ex rel. Richards v. Foust, 165 Wis. 2d 429, 477 N.W.2d 608 (1991); (3) the material presented may be privileged attorney-client communication, work product material, or both; and (4) disclosure would adversely impact victims' rights. The reasons for not disclosing the 2013 recording included: (1) the presentation, which was part of a joint training program for prosecutors and crime victim staff, discussed prosecution strategies in a high-profile sexual extortion case involving high school students; and (2) the presentation contained a substantial amount of detail, which, if disclosed, would violate the Wisconsin Constitution's Article I, § 9m provision requiring that *468 crime victims be treated with "fairness, dignity and respect for their privacy." The recording also contained "sufficient details" that "could lead to identification and invasion of privacy for young victims of a very sensitive series of crimes." In addressing release of a redacted version, Potter explained that doing so would render an "end result meaningless to the viewer."
¶ 5. Liebmann and the Democratic Party petitioned the circuit court for a writ of mandamus seeking release of the records, punitive damages, and costs and attorney's fees. The petition asserted the withheld recordings may contain evidence of misconduct by Attorney Schimel: "Upon information and belief, several or all of these tapes may include offensive racial remarks and ethnic slurs, including but not limited to stereotyped accents, as well as sexist remarks, made by Mr. Schimel."
¶ 6. After viewing both recordings in camera, the circuit court concluded neither video showed misconduct by Attorney Schimel, but ordered both recordings disclosed. The circuit court felt the 2009 video presented a close question because it contained strategies and techniques used in investigating and prosecuting sexual predators. Nevertheless, the circuit court reasoned this video should be disclosed because the techniques discussed were "widely known" via "books, magazine articles, [and] TV shows." It did not think the video contained "any real secrets" and compared prosecuting sexual predators to playing hopscotch: when the predators find ways to get around the State's techniques, the State has to catch up and find another way. The circuit court was "certain" the strategies discussed "are taught in law enforcement academies, FBI training academies, et cetera." The circuit court decided that parents needed to see the 2009 video so they could *469 better protect their children from sexual predators. The circuit court specifically acknowledged that the 2009 video did not involve "misconduct on the part of any of the presenters."
¶ 7. With respect to the 2013 video, the circuit court reasoned disclosure was required because (1) the video did not contain specifically identifiable names of victims; (2) the victims' responses to the sex extortion, described by Attorney Schimel in the video, were "perfectly natural responses to the horrific crimes that these children were subject to," and no one should be surprised by the "traumatic effects" these children suffered; (3) this information is important for members of the public to know so they can protect their children; and (4) many of the details discussed in the video were in the original case file and had previously been "splattered all over the Internet." The circuit court did recognize that re-disclosing this information now may "distress" and re-traumatize the victims, but the court did not believe such factors outweighed the public's right to "know the contents of these tapes."
¶ 8. In a summary disposition opinion and order, the court of appeals affirmed the circuit court's decision. Release of the two recordings at issue has been stayed during the appeal process. In addition, the DO J allowed the attorney representing the Democratic Party to view both the 2009 and 2013 videos, subject to a protective order. After viewing the videos twice, counsel abandoned any claim that the videos contain any misconduct by Attorney Schimel. We accepted the DOJ's petition for review in January 2016.
*470 II. DISCUSSION
A. Standard of Review
f 9. Our review here is de novo. See Woznicki v. Erickson, 202 Wis. 2d 178, 192, 549 N.W.2d 699 (1996). "Whether harm to the public interest from [disclosure] outweighs the public interest in [disclosure] is a question of law." See Newspapers, Inc. v. Breier, 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979). The legislature has created a presumption of accessibility to public records. See Nichols v. Bennett, 199 Wis. 2d 268, 273, 544 N.W.2d 428 (1996). If a custodian denies a public records request, he or she must give specific reasons for denying access, and it is the role of the court to determine whether the reasons are sufficient. See Breier, 89 Wis. 2d at 427. Although we may benefit from the circuit court's and court of appeals' analyses, our determination is made independently. See Hempel v. City of Baraboo, 2005 WI 120, ¶ 21, 284 Wis. 2d 162, 699 N.W.2d 551. The party seeking nondisclosure has the burden to "show that 'public interests favoring secrecy outweigh those favoring disclosure.'" John K. MacIver Inst. for Pub. Policy, Inc. v. Erpenbach, 2014 WI App 49, ¶ 14, 354 Wis. 2d 61, 848 N.W.2d 862 (quoted source omitted).
B. Applicable Law
¶ 10. Wisconsin is firmly committed to open and transparent government, as evidenced by the policy expressed by the legislature in our Public Records Law:
[I]t is declared to be the public policy of this state that all persons are entitled to the greatest possible infor *471 mation regarding the affairs of government and the official acts of those officers and employees who represent them .... To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.
Wis. Stat. § 19.31. Wisconsin law does recognize three types of exceptions to this general policy of open access: (1) statutory exceptions; (2) common law exceptions; and (3) public policy exceptions. See Hempel, 284 Wis. 2d 162, ¶ 28. When a public records request is made, the record custodian must determine whether the Public Records Law applies. If the law applies, the presumption favors disclosure of the record. Id. The next step is to determine whether any exceptions operate to overcome the general presumption of openness. Id. "[T]he legislature entrusted the records custodian with substantial discretion" in making this determination. Id., f 62.
¶ 11. Exceptions to the public records law's general presumption of disclosure exist because some requests conflict with other important policy considerations. Id., ¶ 28. The custodian must conduct "the open records disclosure analysis on a case-by-case basis." Id., ¶ 62. If a statutory or common law exception applies, the analysis ends and the records will not be disclosed. Id. If neither applies, the custodian proceeds to the public policy balancing test, which requires a consideration of all relevant factors to determine whether the public interest in nondisclosure outweighs the public interest in favor of disclosure. Id., f 63. The test con *472 siders whether disclosure would cause public harm to the degree that the presumption of openness is overcome.
¶ 12. This case does not involve any of the statutory exceptions set forth in Wis. Stat. §§ 19.31-39. The DO J asserts one common law exception: prosecutorial files are exempt as recognized in Foust. This court in Foust held that "prosecutorial files are exempt from public access" as a common law exception even after the case is closed. Id. at 430, 433-34. In doing so, we explained that investigations and data collected are not open for public viewing because disclosure of this information would be "harmful to the orderly administration of justice." Id. at 435-36. We listed multiple reasons for our conclusion, including the discretion afforded to prosecutors and the fact that their files "may contain historical data leading up to the prosecution which may be in the form of anonymous statements, informants' statements, or neighborhood investigations at the scene of the crime." Id. at 434^35. We noted that this material needs to be protected in order to ensure that the public will continue to cooperate in criminal investigations. Id. at 435.
¶ 13. Linzmeyer v. Forcey, 2002 WI 84, 254 Wis. 2d 306, 646 N.W.2d 811, is another pertinent public records case. In Linzmeyer, we held that a police report requested by a newspaper and the alleged victims could be disclosed over the objection of the teacher who was the subject of the police investigation. Id., ¶¶ 2-3. Emphasizing the strong public interest in investigating and prosecuting criminal activity, we recognized that nondisclosure is appropriate when necessary to protect the public interest in "the reputation and privacy of citizens." Id., ¶ 31. Our concern was not for the individual teacher's embarrassment but for "the public *473 effects of the failure to honor the individual's privacy interests." Id. We also quoted the exemptions set forth in the Freedom of Information Act, 5 U.S.C. § 552(b)(7) (2000), and said that "when coupled with our prior caselaw," FOIA "factors provide a framework that records custodians can use to determine whether the presumption of openness in law enforcement records is overcome by another public policy." Linzmeyer, 254 Wis. 2d 306, ¶ 33. As pertinent here, the Freedom of Information Act exempts records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." Id., ¶ 32 (quoting 5 U.S.C. § 552(b)(7)(E)).[6] The threat that releasing a record would reveal techniques and procedures used in "a sting or undercover operation that would require secrecy" weighs against disclosure in the balancing test. Linzmeyer, 254 Wis. 2d 306, ¶ 41.
¶ 14. This case also involves a very important public policy consideration—of constitutional dimension—with respect to the treatment of crime victims in Wisconsin. The Wisconsin Constitution specifically provides: "This state shall treat crime victims, as defined by law, with fairness, dignity and *474 respect for their privacy." Wis. Const, art. I, § 9m. This policy is further embodied in Wis. Stat. § 950.04(lv)(ag)[7] governing rights of crime victims and Wis. Stat. § 950.055(1)[8] governing rights of juvenile crime victims. This court recognizes "that justice requires that all who are engaged in the prosecution of crimes make every effort to minimize further suffering by crime victims." Schilling v. Crime Victims Rights Bd., 2005 WI 17, ¶ 26, 278 Wis. 2d 216, 692 N.W.2d 623. The public policy interest in protecting the privacy of victims of crime—especially children affected by very sensitive crimes—weighs heavily in favor of nondisclosure.
f 15. Having set forth the relevant framework, we now turn to an analysis of the 2009 and 2013 recordings.
C. Analysis
1. 2009 Recording
¶ 16. At the 2009 training, Attorney Schimel discussed: what undercover officers can and cannot *475 say when attempting to catch sexual predators, specific strategies to ensure adequate evidence exists for trial, how to extract evidence from computers, and how to overcome common defenses in sexual exploitation cases. Attorney Schimel shared the specific strategies and techniques he used, and he provided numerous case-specific examples, even on occasion referring to the cases by name. There is no doubt that this recording contains specific techniques and procedures for law enforcement investigations and prosecutions in Wisconsin. The question is whether, because of this, application of the balancing test makes the 2009 video an exceptional case justifying nondisclosure. Stated otherwise, would releasing this video be harmful to the public interest so as to overcome the general presumption in favor of disclosure?
¶ 17. The law does not provide an exhaustive list of specific factors used when applying the balancing test. An exhaustive list would be difficult if not impossible to create given the factually specific nature of public records cases. We review whether the custodian considered "all the relevant factors." Hempel, 284 Wis. 2d 162, ¶ 63.
¶ 18. Attorney Schimel is an elected official, and this factor weighs in favor of disclosure. See Linzmeyer, 254 Wis. 2d 306, ¶ 29. The content of the 2009 video, however, and its potentially harmful impact on the *476 public interest weighs strongly in favor of nondisclosure. In the video, Attorney Schimel discusses tactics and strategies used by law enforcement and prosecutors to catch and convict criminals who prey on minors. The techniques discussed involve undercover and sting operations to catch criminals who use computers to victimize children. The presentation occurred at a confidential training session for prosecutors and victims' right advocates, with some police representatives present.[9] Public records containing prosecution strategies and police tactics are not specifically excepted from disclosure by Wisconsin statutes, but record custodians can properly consider such content when determining "whether the presumption of openness ... is overcome by another public policy," see Linzmeyer, 254 Wis. 2d 306, f ¶ 32-33, and as noted, the federal Freedom of Information Act lists this type of record as exempt "if such disclosure could reasonably be expected to risk circumvention of the law" and protects it statutorily from disclosure, see 5 U.S.C. § 552(b)(7)(E).
¶ 19. The reason for protecting prosecutorial techniques and local police strategies is obvious: if local criminals learn the specific techniques and procedures used by police and prosecutors, the disclosed information could be used to circumvent the law. The content of the 2009 video falls squarely into this category. Releasing this video would create a signifi *477 cant risk that specific techniques and strategies being used in Wisconsin could instantly be disseminated over the internet and exploited by sexual predators. This information would in essence serve as a textbook enlightening Wisconsin criminals on how to avoid detection, elude capture, and escape conviction. The harm arising from release would substantially impair the ongoing battle police and prosecutors face in protecting children and would impede efforts made to catch and prosecute sexual predators who lurk in the shadows and anonymity of internet websites. Although disclosing this information directly to the Democratic Party alone would not necessarily be harmful, releasing the 2009 video to one effectively renders it public to all, including anyone plotting to use it to circumvent the law. See Foust, 165 Wis. 2d at 435 (declining to release a prosecutor's file to a defendant wanting to see his own file because doing so would open the file to anyone who requested the file). Releasing the 2009 video would frustrate the public policy of investigating and prosecuting criminal activity that in this instance would cause considerable public harm, which overwhelmingly outweighs any public interest in viewing it. See Linzmeyer, 254 Wis. 2d 306, ¶ 39.
¶ 20. Drawing on reasons the circuit court used in ordering disclosure, the Democratic Party asserts: (1) the video would be helpful to parents trying to protect their children from predators, and (2) the techniques discussed on the video are not novel, do not contain any secrets, and are widely known, often seen on television shows. The Democratic Party's arguments, like the circuit court's reasons, are flawed and erroneous. This video is replete with police and prosecutor tactics, specific instances of cases with descrip *478 tive details, and practical strategies to gather evidence. This content would not assist the average parent.
¶ 21. The Democratic Party's assertion that the techniques and strategies are so widely known that disclosure would not be harmful is equally questionable. There is no rule of law protecting only brand new or novel prosecution techniques and police strategies, and there is no evidence that releasing local strategies will not lead to circumvention of the law simply because they are also seen on television crime shows. The Democratic Party does not cite any authority to support its "novel" argument, and when directly asked for authority for this proposition during oral argument, the Democratic Party's attorney was unable to provide any. Although child predators may know in general terms various techniques taught to and employed by police departments across the country, the specific techniques used by police officers in a particular jurisdiction or geographic area are not necessarily a matter of common public knowledge. A criminal who knows the specific techniques being used locally is much more likely to evade capture than a criminal who, after viewing a crime show, guesses at what techniques local police and prosecutors are using.
¶ 22. Another factor to balance in these cases is the presence of "official cover-up" by public officials. Hempel, 284 Wis. 2d 162, ¶ 68. "The public has a very strong interest in being informed about public officials who have been derelict in their duty." Id. Everyone in this case, including the Democratic Party, agrees that the video does not contain any evidence of misconduct. Because the video reveals no misconduct or dereliction *479 of duty, this factor does not counter the strong public policies supporting nondisclosure.
¶ 23. Additionally, the context of the records' request, although not always relevant, should be considered here. See id., ¶ 66 ("When performing a balancing test, however, a records custodian almost inevitably must evaluate context to some degree."). The Public Records Law does not require a requestor to disclose his or her identity or to state a purpose for the request. See Wis. Stat. § 19.35(l)(i). But by asserting that, "[u]pon information and belief, several or all of these tapes may include offensive racial remarks and ethnic slurs, including but not limited to stereotyped accents, as well as sexist remarks, made by Mr. Schimel," the language of the Democratic Party's petition for a writ of mandamus suggests a partisan purpose underlying the request. During a contested election, the request sought records containing allegedly offensive comments made by the candidate from the opposing political party. And the Democratic Party persists in its pursuit of the records, despite the fact that its attorney has now viewed the recordings and the parties agree the recordings contain no such offensive content. When weighed against the likely harm to law enforcement's efforts to capture and convict sexual predators who target children, the counterfactual justification offered for the request clearly does not tip the balance towards overturning the record custodian's decision.
¶ 24. In applying the balancing test to the 2009 video, we conclude that the public interest in preventing release of specific police and prosecution strategies and techniques being taught and used in Wisconsin outweighs the general legislative presumption that *480 public records should be disclosed. We are a State committed to open and transparent government, but if disclosure results in greater public harm than nondisclosure, the scale must tip in favor of nondisclosure, especially when sexual exploitation of vulnerable children is at risk. Because the 2009 video consists almost entirely of police tactics and specific prosecution strategies in cases involving sexual exploitation of children, disclosure would result in public harm. The public policy factors favoring nondisclosure thus overcome the presumption in favor of disclosure. The record custodian gave specific reasons for the decision not to disclose the 2009 recording, and we conclude the reasons given were legally sufficient and sound.[10]
*481 2. 2013 Recording
f 25. In the 2013 recording, Attorney Schimel discussed a high-profile sex extortion case where a high school student victimized dozens of minors before a single victim reported the abuse. Attorney Schimel recounted the background, the investigation, the charging decisions, the attempt to keep the victims' identities confidential, the impact on the case when a breach of that confidentiality revealed the identity of all of the victims, the negative effects the disclosure of the identities caused, and his thoughts and strategies for prosecution.
¶ 26. Before we apply the balancing test, we analyze whether the common law exception to disclosure for a prosecutor's case files, discussed in Foust, applies to these facts. See Foust, 165 Wis. 2d at 433-35. Foust held that a district attorney's closed files were not subject to the Public Records Law based on the broad discretion a district attorney has in charg *482 ing, the confidential nature of the contents of a file, and the threat disclosure poses to the orderly administration of justice. Id.
¶ 27. The 2013 video, of course, is not a prosecutor's typical paper case file. Rather, the record is an oral, in-depth presentation by Attorney Schimel, who was the prosecutor in charge of the sex extortion case discussed. Attorney Schimel shared his thought processes for charging and walked through the case from the beginning to the end. The presentation is in great respect the oral equivalent of a prosecutor's closed case file. The same rationale asserted in Foust to protect closed prosecutorial case files from disclosure under public records requests applies to the video here. Attorney Schimel's oral presentation included his analysis and impressions regarding charging and how to charge, a concept Foust labeled as confidential. Foust, 165 Wis. 2d at 433-35. The presentation also addressed issues relating to confidentiality of victims' identities and statements, which parallels Foust's concerns about anonymous statements and informants' statements. See id. at 435. Attorney Schimel discussed what would equate to "historical data leading up to the prosecution," which Foust expressed should be protected from public disclosure. Id. Based on these similarities, it would be illogical to conclude that a paper accounting of a district attorney's discretionary processes must be kept confidential but an oral accounting of the same, given in a confidential setting, need not. It is the nature of the record, rather than its form or location that matters. See Nichols, 199 Wis. 2d at 270, 274-75. ("To conclude otherwise would elevate form over substance."); see also Portage Daily Register v. Columbia Cty. Sheriff's Dep't, 2008 WI App 30, ¶¶ 18-19, 21-22, 308 Wis. 2d 357, 746 N.W.2d 525 *483 (declining to allow sheriffs department to rely on Foust exception as basis for withholding report merely because it was forwarded to district attorney's office); Bldg. & Constr. Trades Council of S. Cent. Wis. v. Waunakee Cmty. School Dist., 221 Wis. 2d 575, 587 n.3, 585 N.W.2d 726 (Ct. App. 1998) (distinguishing private records from public records). The substance of this 2013 video contains the same discretionary content found in a prosecutor's file; therefore, the Foust common law exception renders the 2013 video exempt from disclosure under Wisconsin's Public Records Law.
¶ 28. Our analysis could end here because the common law exception applies. This case, however, involves a public policy consideration of constitutional significance, and we therefore choose to proceed to an application of the public policy balancing test. First, again, Attorney Schimel is a public official, a factor weighing in favor of disclosure. Second, the content of the video, like the 2009 video, contains prosecution strategies and law enforcement tactics, which, as Linzmeyer explains, weighs in favor of nondisclosure. See Linzmeyer, ¶¶ 32-33. Third, the 2013 video discusses the victims of the sex extortion case and the devastating impact of these crimes, especially after the victims' identities were discovered. Wisconsin's constitutional commitment to the fair treatment of victims and their privacy rights, together with this court's commitment to minimizing victims' suffering, weigh in favor of nondisclosure. Although we cannot always protect victims from re-traumatization or additional suffering, the circumstances here clearly allow us to do so.
¶ 29. Although we review the record custodian's decision, we briefly explain why the four reasons the circuit court gave for overturning the custodian's deci *484 sion are inadequate and erroneous. We do so because the Democratic Party relies on the circuit court's reasoning to advance its position that the 2013 video should be disclosed. First, the fact that no specific names are used on the video does not render the victims unidentifiable. Disclosing the recording would reignite interest in the case and allow identification in the same way it occurred the first time around. There is sufficient factual detail in the recording to easily connect the dots to identify the dozens of victims, who would be re-traumatized should this case result in a repeat exposure of their identities almost a decade after these events occurred. Disclosure leading to re-victimization would run afoul of Wisconsin's constitutional commitment to treating victims with "fairness, dignity and respect for their privacy." Wis. Const, art. I, § 9m. Further, the victims involved here were all child victims who deserve special treatment and protection with an emphasis on keeping their identities confidential, "especially in sensitive cases." See Wis. Stat. § 950.055(1). This court will "make every effort to minimize further suffering by crime victims." Schilling, 278 Wis. 2d 216, f 26.
I 30. Second, the circuit court's reasoning that the victims' reactions to the crimes were "perfectly natural" and would not be surprising to anyone is not a relevant factor in weighing disclosure over nondisclosure. Whether a victim's reaction is natural or excessive should not be a justification for re-traumatizing child victims of sensitive crimes. What must be considered is whether the victims will be re-traumatized by renewed suffering as a result of an additional violation of their privacy.
¶ 31. Third, the rationale that disclosure would help parents protect their children from sexual preda *485 tors is unconvincing. Although this video may contain limited helpful information on this topic, many other useful resources exist for parents but do not present the same threat of harm to victims. The DOJ makes available online materials helpful to concerned parents.[11] Local schools, communities, and police departments also offer a variety of helpful resources and seminars.[12]
¶ 32. Fourth, the fact that a significant amount of the information discussed in the recording had been previously disseminated seven or eight years ago, although "germane to the balancing test" see Linzmeyer, 254 Wis. 2d 306, ¶ 37, does not require disclosure. This information was disclosed almost a decade ago. As presented in the affidavit submitted by Jill J. Karofsky, Executive Director of the Office of Crime Victim Services, re-disclosing the details of a case typically re-traumatizes victims. Karofsky asserts that bringing new public attention to a case can be "crushing" for victims who have otherwise moved on from a case. It is not unreasonable—indeed, it comports with common sense—to expect additional harm will be inflicted on the victims every time a case such as this is publicized, especially if done in a high-profile way such as a lawsuit that is pursued through all three levels of Wisconsin's court system with much media attention. Moreover, releasing the 2013 video creates a real risk that future victims will not report crimes and *486 will not cooperate with prosecutors. Effective prosecution depends upon victims reporting in the first instance and cooperating until the end of the case.[13]
I 33. In balancing the equally important public policies of openness of public records against the constitutional declaration demanding protection and fair treatment of victims, coupled with the need for victim reporting and cooperation in order to identify lawbreakers, we conclude that the Public Records Law did not require the record custodian to release the 2013 video. The video contains no misconduct or evidence showing dereliction of duty. Rather, it contains an oral account of the prosecution of a high school student who sexually extorted dozens of his fellow students. The account was presented at a confidential prosecutor training seminar, and aside from the general presumption favoring disclosure, it has little public value. Disclosure would provide the public with Attorney Schimel's mental processes and thoughts with respect to a sex extortion case he prosecuted many years ago. Contrary to Foust, releasing the video would give the public insight into Attorney Schimel's discretionary charging decisions, and it would likely reignite the *487 public and media outrage associated with the crimes at issue here. It would undoubtedly re-traumatize and harm the victims who were minors at the time of these crimes, and its disclosure would send a strong message to crime victims that the continued pain that sometimes accompanies the pursuit of justice does not end—even when a prosecution is complete and the case is closed. The balancing test clearly weighs in favor of nondisclosure and strongly overcomes the presumption favoring disclosure.
III. CONCLUSION
¶ 34. Wisconsin and this court are firmly committed to open and transparent government. The denial of public access occurs only in exceptional cases. This case presents one of those exceptional situations. The two videos requested here do not contain any evidence of official misconduct. The circuit court, the court of appeals, this court, and the Democratic Party all agree on this point. Both the 2009 and 2013 videos arise from confidential prosecutors' training sessions, and both videos contain instruction on prosecutorial strategies and law enforcement tactics. The 2013 recording is an accounting of a single case and the functional equivalent of a prosecutor's case file, which is exempt from disclosure under Foust. Further, it contains information, which, if released, would harm the public interest by re-traumatizing the victims and violating their privacy rights, contrary to the policies enshrined in our state constitution, statutes, and case law. In applying the balancing test required by Wis. Stat. § 19.35(l)(a), the DOJ record custodian gave specific reasons for nondisclosure, and our review independently demonstrates that the reasons proffered are sufficient and supported by the facts in this *488 case. We reverse the decision of the court of appeals and deny the writ of mandamus.
By the Court.—The decision of the court of appeals is reversed.

 Democratic Party of Wis. v. DOJ, No. 2014AP2536—FT, unpublished slip op. (Wis. Ct. App. Oct. 14, 2015).

 The Honorable Richard G. Niess of Dane County presided.

 All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

 During the pendency of this case, Attorney Schimel served as the Waukesha County District Attorney and later as Wisconsin Attorney General. To avoid confusion, we refer to him throughout as "Attorney Schimel." At the time of both presentations at issue, Attorney Schimel served as the Wauke-sha District Attorney. At the time of the 2013 presentation, he was also the Republican candidate for Wisconsin Attorney General in a contested election, which he won in November 2014.

 The presentations are not professionally recorded and the videos are of low quality. As we understand it, a video camera was set up and an attendee was asked to push "record" when the presentation started and to push "stop" when it ended.

 The Freedom of Information Act applies to federal records and therefore is not controlling in Wisconsin Public Records cases, but as Linzmeyer and other Wisconsin cases have recognized, FOIA and the cases interpreting it can be used as persuasive authority in deciding Wisconsin Public Records cases. See Linzmeyer v. Forcey, 2002 WI 84, ¶ 33, 254 Wis. 2d 306, 646 N.W.2d 811; State ex rel. Hill v. Zimmerman, 196 Wis. 2d 419, 428 n.6, 538 N.W.2d 608 (Ct. App. 1995).

 Wisconsin Stat. § 950.04(1v) provides, in part:
RIGHTS OF VICTIMS. Victims of crimes have the following rights:
(ag) To be treated with fairness, dignity, and respect for his or her privacy by public officials, employees, or agencies. This paragraph does not impair the right or duty of a public official or employee to conduct his or her official duties reasonably and in good faith.

 Wisconsin Stat. § 950.055(1) provides:
LEGISLATIVE INTENT. The legislature finds that it is necessary to provide child victims and witnesses with additional consider *475 ation and different treatment than that usually afforded to adults. The legislature intends, in this section, to provide these children with additional rights and protections during their involvement with the criminal justice or juvenile justice system. The legislature urges the news media to use restraint in revealing the identity of child victims or witnesses, especially in sensitive cases.

 The Democratic Party argues the training seminars were open to the defense bar, pointing to two names of attorneys on the attendee list currently doing criminal defense work. This argument fails to recognize the reality of the underlying facts. At the time of the presentations, those attorneys attended the seminar in their capacity as prosecutors. The fact that they left their jobs as prosecutors and now represent criminal defendants does not change the nature of the training seminars.

 While excerpts of the recording may fall beyond the public policy considerations favoring nondisclosure, which ordinarily results in the release of a redacted version under Wis. Stat. § 19.36(6), our viewing of the recording validates the custodian's assessment that a redacted version would be meaningless to the viewer. See John C. v. Martha A., 592 N.Y.S.2d 229, 235-36 (Civ. Ct. 1992) (where "entire court file is permeated with confidential" information, no part can be opened for viewing); cf. Am. Civil Liberties Union v. Dep't of Defense, 543 F.3d 59, 84 (2d Cir. 2008) (affirming district court order releasing certain redacted photographs depicting abuse of detainees at military prison, but mentioning without objection that "[wjhere 'individual recognition could not be prevented without redaction so extensive as to render the images meaningless,' the court ordered those photographs to be withheld"), vacated on other grounds 558 U.S. 1042 (noting intervening change in federal law); Harwood v. McDonough, 799 N.E.2d 859, 866-70 (Ill. App. Ct. 2003) (affirming withholding of report under Illinois open records law where trial court "concluded that plaintiff was not entitled to a redacted report ... if the result of the redaction was a document consisting of blank pages, along with meaningless pronouns and articles such as the words 'and,' ’or,’ ’but,’ etc.”); Kestenbaum v. Mich. State Univ., 327 N.W.2d 783, 788 n.10 (Mich. 1982) *481 (observing that "redaction of the exempt information—names and addresses of students—[under personal privacy exemption in Michigan open records law] would render the computer tape useless to plaintiff Kestenbaum," who sought to use source for university directory to create political mailing list). But cf. State ex rel. Pietrangelo v. Avon Lake, 2016- Ohio-2974, ¶ 35, 55 N.E.3d 1091 ("As we noted in . .. rejecting the . . . argument that the remainder of a redacted document would be 'meaningless,' there is no 'exception to the explicit duty in [the Ohio public records law] for public offices to make available all information that is not exempt after redacting the information that is exempt.'" (quoting State ex rel. Anderson v. Vermilion, 2012-Ohio-5320, ¶ 19, 980 N.E.2d 975)). Meaningless redaction is particularly applicable here where the records consist of video recordings. The nondisclosable content on the videos permeates the recordings, making redaction futile.

 See Internet Crimes Against Children Task Force, Protect Kids Online Podcast (2016), https://www.doj.state.wi.us/ dci/icac/protect-kids-online-pko-podcast.

 See, e.g., Internet Crimes Against Children, Milwaukee Cty., http://county.milwaukee.gov/InternetCrimesAgains9120. htm (last visited Dec. 19, 2016).

 This case is not about protecting an individual's privacy interest like in Linzmeyer, where the teacher objected to the release of a police report generated during an investigation of possible inappropriate actions between the teacher and some students. See Linzmeyer, 254 Wis. 2d 306, ¶ 31 (observing that the public interest in protecting the reputation and privacy of citizens is "not equivalent to an individual's personal interest in protecting his or her own character and reputation"). Rather, the case before this court is about the public interest in protecting the reputation and privacy of crime victims and the concomitant public policy that such protection will encourage victims to report crimes and cooperate in prosecution of criminals.